**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| SHILPA PHARMA, INC.,<br>　　　　　Plaintiff,<br><br>　　　v.<br><br>NOVARTIS PHARMACEUTICALS<br>CORPORATION,<br>　　　　　Defendant. | C.A. No. 21-558-MN<br><br>JURY TRIAL DEMANDED |

**NOVARTIS'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISQUALIFY
CHIDAMBARAM S. IYER AS PLAINTIFF'S COUNSEL UNDER
THE LAWYER-WITNESS RULE**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

FACTS .......................................................................................................................2

    Shilpa's Complaint................................................................................................ 2

    Shilpa's Interrogatory Responses ........................................................................ 4

    Subsequent Developments ................................................................................... 6

ARGUMENT .............................................................................................................7

    I.     The Court Should Disqualify Mr. Iyer....................................................... 9

          A.     Mr. Iyer Is a "Necessary" Witness............................................. 11

          B.     No Exception to Rule 3.7 Applies .............................................. 14

          C.     Mr. Iyer's Disqualification Should Be Total ............................. 16

    II.    Alternatively, Mr. Iyer Should Be Barred from Most Pretrial
          Activities, and Trial ................................................................................. 18

CONCLUSION.......................................................................................................... 19

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abrishamian v. Washington Med. Grp., P.C.*,
216 Md. App. 386 (Md. 2014) ........................................................................................... 17

*Amgen Inc. v. Shilpa Medicare Ltd.*,
No. 3:18CV11157 (D.N.J. June 27, 2018) .......................................................................... 16

*Andrx Pharmaceuticals, LLC v. GlaxoSmithKline, PLC*,
236 F.R.D. 583 (S.D. Fla 2006) .................................................................................... 10, 18

*ASI, Inc. v. Aquawood, LLC*,
No. 19-CV-0763 (JRT/HB), 2021 WL 2374864 (D. Minn. June 10, 2021) .......................... 19

*Biogen MA Inc. v. Shilpa Medicare Limited*,
No. 1:17CV00847 (D. Del. June 28, 2017) ......................................................................... 16

*Commil USA, LLC v. Cisco Sys., Inc.*,
135 S. Ct. 1920 (2015) ...................................................................................................... 13

*Corona v. Hotel & Allied Servs. Union Loc. 758*,
No. 04-CV-10074 (CSH), 2005 WL 2086326 (S.D.N.Y. Aug. 30, 2005) ...................... 15, 17

*In re Corp. Res. Servs., Inc.*,
576 B.R. 779 (Bankr. S.D.N.Y. 2017), *rev'd and remanded*,
595 B.R. 434 (S.D.N.Y. 2019) .......................................................................................... 17

*Dunlap v. State Farm Fire & Cas. Co.*,
955 A.2d 132 (Del. Super. Ct. 2007) ........................................................................... 14, 17

*E.E.O.C. v. Bardon, Inc.*,
2010 WL 323067 (D. Md. Jan. 19, 2010) .......................................................................... 17

*Eisai R&D Management Co., Ltd. et al. v. Shilpa Medicare Limited*,
No. 3:20CV06729 (D.N.J. June 1, 2020) ........................................................................... 16

*Emerald Partners v. Berlin*,
564 A.2d 670 (Del. Ch. 1989) ........................................................................................... 17

*Carta ex rel. Est. of Carta v. Lumbermens Mut. Cas. Co.*,
419 F. Supp. 2d 23 (D. Mass. 2006) ....................................................................... 12, 16, 17

*Matter of Est. of Waters*,
647 A.2d 1091 (Del. 1994) ......................................................................................... 8, 10, 11, 12

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Finn v. Harbor Metal Treating Inc.*,
   No. 3:09-CV-130CAN, 2009 WL 3642753 (N.D. Ind. Oct. 29, 2009) .............................15, 17

*Freeman v. Vicchiarelli*,
   827 F. Supp. 300 (D.N.J. 1993) ...................................................................................13, 17

*Fuller v. Collins*,
   114 A.D.3d 827 (2d Dep't 2014) ........................................................................................15

*Genentech, Inc., et al. v. Apotex Inc., et al.*,
   No. 1:19CV00078 (D. Del. Jan. 14, 2019) .........................................................................16

*Genentech, Inc. et al. v. Shilpa Medicare Limited*,
   No. 1:20CV00624 (D. Del. May 8, 2020) ..........................................................................16

*General Mill Supply Co. v. SCA Services, Inc.*,
   697 F.2d 704 (6th Cir. 1982) .......................................................................................14, 15

*Gilead Sciences, Inc. v. Apotex, Inc. et al.*,
   No. 1:20CV00189 (D. Del. Feb. 7, 2020) ..........................................................................16

*iHealthcare, Inc. v. Greene*,
   No. 2:11 CV 396, 2012 WL 2026361 (N.D. Ind. June 5, 2012) ..........................................17

*Jensen v. Poindexter*,
   352 P.3d 1201 (Okla. 2015) ...............................................................................................17

*Jones v. City of Chicago*,
   610 F. Supp. 350 (N.D. Ill. 1984) ..........................................................................10, 15, 17

*Klupt v. Krongard*,
   126 Md. App. 179 (Md. 1999) .......................................................................................8, 14, 17

*Lowe v. Experian*,
   328 F. Supp. 2d 1122 (D. Kan. 2004) ................................................................................19

*MacArthur v. Bank of N.Y.*,
   524 F. Supp. 1205 (S.D.N.Y. 1981) ...................................................................................13

*Massachusetts Sch. of L. at Andover, Inc. v. Am. Bar Ass'n*,
   872 F. Supp. 1346 (E.D. Pa. 1994), *aff'd*,
   107 F.3d 1026 (3d Cir. 1997)..............................................................................................16

*Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*,
   239 F. Supp. 2d 1170 (D. Colo. 2003) ...............................................................................12

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Northbrook Digital, LLC v. Vendio Servs., Inc.*,
    625 F. Supp. 2d 728 (D. Minn. 2008)...................................................................................19

*Noval Williams Films LLC v. Branca*,
    128 F. Supp. 3d 781 (S.D.N.Y. 2015)..................................................................................17

*Novartis Pharmaceuticals Corporation et al. v. Shilpa Medicare Limited*,
    No. 1:15CV01111 (D. Del. Nov. 30, 2014)..........................................................................16

*OSI Pharmaceuticals, LLC et al. v. Shilpa Medicare Limited*,
    No. 1:18CV01096 (D. Del. July 25, 2018) ...........................................................................16

*Pharmacyclics LLC et al. v. Shilpa Medicare Limited et al*,
    No. 1:18CV00237 (D. Del. Feb. 9, 2018)............................................................................16

*Premium Prods., Inc. v. Pro Performance Sports, LLC*,
    997 F. Supp. 2d 433 (E.D. Va. 2014) ..................................................................................13

*Princeton Digital Image Corp. v. Off. Depot Inc.*,
    No. CV 13-239-LPS, 2017 WL 3573812 (D. Del. Aug. 17, 2017) ........................................7

*Rumpza v. Donalar Enterprises, Inc.*,
    581 N.W.2d 517 (S.D. 1998) ..............................................................................................17

*Sanofi-Aventis U.S. LLC et al. v. Shilpa Medicare Limited*,
    No. 1:19CV01975 (D. Del. Oct. 17, 2019) ..........................................................................16

*SenoRx, Inc. v. Hologic, Inc.*,
    920 F. Supp. 2d 565 (D. Del. 2013).......................................................................................9

*Sherwood Grp., Inc. v. Rittereiser*,
    No. CIV. 90-2414 (CSF), 1991 WL 87578 (D.N.J. May 20, 1991) .......................................17

*Shipley v. Schlecker*,
    No. CIV.A. 2002-01-422, 2002 WL 32072579 (Del. Com. Pl. Dec. 2, 2002) .......................17

*Stewart v. Bank of America, N.A.*,
    203 F.R.D. 585 (D. Ga. 2001)........................................................................................9, 17

*SuperGuide Corp. v. DirecTV Enterprises, Inc.*,
    141 F. Supp. 2d 616 (W.D.N.C. 2001) ...............................................................................14

*Thomas Steel Corp. v. Ameri-Forge Corp.*,
    No. 91 C 2356, 1991 WL 280086 (N.D. Ill. Dec. 27, 1991) ................................................15

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Turner v. AIG Domestic Claims, Inc.*,
   No. 4:10CV3159, 2011 WL 2632893 (D. Neb. July 5, 2011), *rev'd*,
   823 F. Supp. 2d 899 (D. Neb. 2011) .................................................................................11, 17

*U.S. v. Merlino*,
   349 F.3d 144 (2003) ......................................................................................................................17

*U.S. v. Miller*,
   624 F.2d 1198 (3d Cir. 1980) .........................................................................................................7

*VanNostrand v. New York Cent. Mut. Fire Ins. Co.*,
   127 A.D.3d 851 (2d Dep't 2015) ...................................................................................................14

*VLSI Tech. LLC v. Intel Corp.*,
   No. 18-966-CFC, 2019 WL 1349468 (D. Del. Mar. 26, 2019) ......................................................12

*Weigel v. Farmers Ins. Co., Inc.*,
   356 Ark. 617 (Ark. 2004) ...............................................................................................................14

*World Youth Day, Inc. v. Famous Artists Merch. Exch., Inc.*,
   866 F. Supp. 1297 (D. Colo. 1994) ............................................................................................9, 19

*ZapFraud, Inc. v. Barracuda Networks, Inc.*,
   528 F. Supp. 3d 247 (D. Del. 2021) .........................................................................................12, 13

**Statutes**

35 U.S.C. § 284 ..................................................................................................................................18

**Rules**

ABA, Annotated Model Rule of Professional Conduct, Rule 3.7 (9th ed. 2019) .................. *passim*

ABA, Annotated Model Rules of Professional Conduct (3d ed. 1996) .........................................8

D. Del. L. R. 83.6(d) .........................................................................................................................8

## PRELIMINARY STATEMENT

Plaintiff Shilpa has recently identified one of its own trial counsel as the only Shilpa witness to key events in this case. But "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness." ABA Ann. Model R. Prof. Cond. 3.7(a) (9th ed. 2019) ("Model Rule 3.7"). Despite this longstanding rule, counsel refuses to withdraw. Novartis, regrettably, must move to disqualify.

Shilpa has sued Novartis for patent infringement. One of Shilpa's counsel is Mr. Chidambaram S. Iyer of Sughrue Mion, PLLC. He appears on the Complaint and has been admitted *pro hac vice*. In recent interrogatory responses, Shilpa identified Mr. Iyer as the only named Shilpa witness to several 2016 discussions with Novartis about licensing the patent. Mr. Iyer allegedly was the first to tell Novartis about the patent's existence in a one-on-one discussion in February 2016; he then set up and attended a meeting with unnamed Shilpa representatives and Novartis to discuss a license in March 2016; and he then followed up with one or more one-on-one discussions with Novartis in April 2016. Ultimately, Novartis declined the license.

These events are central to Shilpa's case. Shilpa relies on the licensing discussions to claim willful and intentional direct and indirect infringement. Mr. Iyer is thus a "necessary" witness under the lawyer-witness rule. His testimony is "relevant," "material," "not merely cumulative," and "unobtainable elsewhere." (*See* below at 9–14.) He is the only witness Shilpa names, and the only Shilpa witness in two or more key discussions. He is thus the *only* source for Shilpa's side of the story—a story that Novartis vigorously disputes.

Mr. Iyer cannot serve as Shilpa's counsel. If he did, he would have access to discovery materials that could, even innocently, shape his memory and testimony about the 2016 discussions, such as Novartis confidential documents. Mr. Iyer would also be in a position to depose the

1

Novartis personnel he spoke to in 2016, and possibly to defend depositions of other witnesses that attended the March 2016 meeting with him.  And at trial, his involvement as both counsel and witness would confuse the jury.

Novartis must respectfully ask the Court to disqualify Mr. Iyer.  Courts have disqualified lawyers in similar circumstances.  Shilpa will suffer minimal, if any, prejudice—indeed, Shilpa may benefit in being relieved of a lawyer subject to the conflicting duties of zealous advocate and objective witness.  The potential inconvenience to Shilpa pales in comparison to the threat to the integrity of the trial process and fairness to Novartis were Mr. Iyer to remain.

## FACTS

The facts are from docket entries (referred to by D.I. number) and the accompanying November 22, 2021 declaration of Novartis counsel Robert W. Trenchard, and exhibits.

### Shilpa's Complaint

Plaintiff Shilpa Pharma, Inc. is the U.S. operating company of Shilpa Medicare Limited, an Indian company.  (D.I. 1 ¶ 2.)  Defendant Novartis Pharmaceuticals Corporation sells multiple sclerosis medicine Gilenya®, the subject of this case.  (*Id.* ¶¶ 14, 15.)

Shilpa contends that Gilenya infringes U.S. Pat. No. 9,266,816.  The 816 Patent claims "polymorphs"—specific crystal forms—of Gilenya's active ingredient "fingolimod," plus methods of making those polymorphs.  (*Id.* ¶¶ 11, 13, 14.)  Shilpa alleges that the fingolimod in Gilenya is in the form of a polymorph claimed in the 816 Patent.  (*Id.* ¶¶ 13, 25, 34, 44.)

The U.S. Patent and Trademark Office granted the 816 Patent to inventors at Shilpa Medicare in India in February 2016.  (*Id.* ¶ 9.)  Then, according to the Complaint, "[i]n March, 2016, Shilpa Medicare . . . advised Novartis of the issuance of the '816 patent."  (*Id.* ¶ 28.) Thereafter, "[r]epresentatives of each company met . . . [and] GILENYA® was discussed.  After consideration, Novartis did not further respond to Shilpa's offer of a license." (*Id.*)  The Complaint

2

alleges from this that Novartis was on "notice of the '816 patent, and Shilpa's view that the GILENYA® Products were covered by one or more of its claims, since early 2016." (*Id.*; *see also id*. ¶ 49 ("Defendant was aware of the '816 patent since at least March, 2016, when Shilpa Medicare Limited first notified Defendant of the '816 patent and informed them of Plaintiff's belief that GILENYA® was covered by one or more of its claims.").) Novartis has disputed these allegations. (D.I. 13 (Answer) at 2, 4, 6.)

Based in part on this disputed alleged "knowledge of the '816 Patent and knowledge that its acts are encouraging infringement[,]" Shilpa contends that Novartis "is liable . . . under 35 U.S.C. § 271(b)" for induced infringement and "35 U.S.C. § 271(c)" for contributory infringement. (*Id.* ¶¶ 36–37; *see also id*. ¶¶ 47–48.)  In addition, Shilpa alleges that Novartis "knows or should know that the . . . sale in the United States . . . of its GILENYA® Products . . . constitute[s] infringement of the '816 patent without a good faith belief that the '816 patent is invalid or not infringed." (*Id.* ¶ 50.)  "[D]espite this knowledge, [Novartis] deliberately and intentionally continues to . . . sell . . . infringing GILENYA® Products without authorization from [Shilpa]." (*Id.*)  On that basis, Shilpa alleges "willful infringement" and seeks "monetary damages" including "reasonable royalties." (*Id.* ¶ 50, Prayer for Relief at 16–17.)  Again, Novartis disputes these allegations. (D.I. 13 at 5–6.)

Shilpa Medicare assigned the Patent to plaintiff Shilpa Pharma in January 2021, shortly before the Complaint was filed. (*Id.* ¶ 10.)  Shilpa's counsel Mr. Iyer appears as "Of Counsel" on the Complaint. (*Id.* at 17.)  He applied for and was granted admission *pro hac vice*. (D.I. 16.)

**Shilpa's Interrogatory Responses**

Novartis served interrogatories seeking more detail about Shilpa's allegations of willfulness, indirect infringement, and damages.  Shilpa responded on October 18, 2021.  (Ex. A.)  As with the Complaint, Mr. Iyer is on the responses' signature page.  (*Id*. at 22; *see* D.I. 1 at 17.)

**Interrogatory 3** asked for Shilpa's "factual bases . . . that Novartis was aware of the 816 Patent prior to the filing of the complaint," including "the earliest date" Shilpa contends "Novartis was aware of the" Patent; "identification and description of . . . any communication with Novartis" about the Patent or Gilenya before the Complaint; and "identification of all person involved" in those communications.  (Ex. A at 10.)

Shilpa replied that in "February, 2016, Mr. Chid Iyer, outside counsel to Shilpa Pharmaceuticals, contacted Mr. Peter Waibel, Head of Patent Litigation at Novartis Pharmaceuticals Corporation, about the issuance of the '816 patent and its applicability to Novartis' commercial Gilenya® product."  Mr. Iyer additionally asked "whether the parties could meet to discuss the '816 patent[.]"  Later, unnamed "[r]epresentatives from Shilpa Medicare Ltd. and Shilpa [Pharma] met with Mr. Waibel on March 17 and discussed the '816 patent[.]"  Shilpa admitted in subsequent correspondence that Mr. Iyer was present at the March 17 meeting.  (*See* Ex. C (Oct. 28, 2021 Ltr. from Shilpa's counsel) ("[A] representative of Novartis, Mr. Waibel, met with Mr. Iyer and representatives of Shilpa Medicare Ltd. and Shilpa Pharma, Inc. on March 17, 2016 and discussed the '816 Patent.").)  According to Shilpa's responses, "Mr. Waibel stated that they would consider the applicability of the '816 patent to the Gilenya® product and respond in due course.  Mr. Iyer followed up in an email to Mr. Waibel of April 18, 2016."  Thereafter, "Mr. Iyer and Mr. Waibel discussed the '816 patent in one or more subsequent phone conferences, but no agreement was reached."  (Ex. A at 11.)  Shilpa's interrogatory responses named no other Shilpa-side witness to these discussions besides Mr. Iyer.

**Interrogatory 4** asked Shilpa to "[i]dentify and describe . . . licenses . . . or any offers or negotiations therefor, including identifying all persons or entities . . . involved [and] . . . the circumstances surrounding" the negotiations. (*Id.*) Shilpa replied that "[o]ther than the matters referred to in Plaintiff's response to Interrogatory 3," there were none. (*Id.* at 12.)

**Interrogatory 7** asked Shilpa to elaborate on the "contention that Defendant's alleged infringement of any claim of the Asserted Patent is 'willful,' such as the contentions in Paragraph 51 of the Complaint," plus "that Defendants possessed or possesses the required mental state to be liable for indirect infringement, such as the contentions in Paragraphs 47 and 48 of the Complaint[.]" (*Id.* at 15.) Shilpa replied as follows:

- As to willfulness, "Shilpa met with Novartis in March, 2016, and its counsel corresponded with and spoke with Novartis' representative on several occasions before and afterward regarding the applicability of the '816 patent to Novartis' Gilenya® product as set forth in response to Interrogatory No. 3." Novartis thus "had knowledge of the '816 patent" but "declined interest in acquiring any rights under the '816 patent and never provided a basis for demonstrating a good faith belief that their Gilenya® product was not covered by one or more claims of the '816 patent." (*Id.* at 16.)

- On "intent" to induce under 35 U.S.C. § 271(b), "Novartis continues to actively promote the use of Gilenya® by patients and physicians after it had knowledge of the '816 patent." (*Id.*)

- And finally, on contributory infringement under 35 U.S.C. § 271(c), "Novartis' knowledge of the '816 patent, combined with its lack of any articulated good faith basis for noninfringement . . . support the culpable level of knowledge required under § 271(c)." (*Id.* at 17.)

Shilpa itself thus acknowledged the link between the February–April 2016 discussions and the Complaint's allegations of willful and intentional direct and indirect infringement.  Not only is Mr. Iyer the only named Shilpa witness on those issues—he is the only Shilpa witness the responses identify by name at all.  (*Id.* (*passim*).)

**Subsequent Developments**

Shortly after receiving Shilpa's responses, Novartis sent Mr. Iyer a letter to alert him to the lawyer-witness problem revealed by the interrogatory responses.  (*See* Ex. B (Oct. 28, 2021 Ltr. from Novartis's counsel).)  Novartis identified Model Rule 3.7 and reasons why that rule appeared to apply here.  (*See id.*)  Novartis further explained that "[a]s outside counsel," Mr. Iyer "would be allowed access to all discovery in this case, including Highly Confidential-Attorney Eyes Only materials."  (*Id.* at 2.)  Novartis was "concerned that access to these materials could impact" Mr. Iyer's "memory and testimony about" his "2016 interactions with Novartis, however inadvertently. That risk, among others, illustrates the problem of" his "continued involvement as an advocate." (*Id.*)  Novartis advised that, "[a]bsent an adequate response, Novartis will have no choice but to file a motion seeking all appropriate relief."  (*Id.*)

Mr. Iyer's partner replied about six hours later.  (Ex. E at 8.)  He denied that Mr. Iyer would be a witness, and surmised that Novartis's counsel would face disqualification, too, by virtue of involvement in settling different cases about different Gilenya patents.  (Ex. C.)  Novartis replied the next day with further analysis (Ex. D), to no avail—Mr. Iyer's partner again threatened to seek to disqualify Novartis's outside counsel if this issue were brought to the Court (Ex. E at 3; Ex. F at 1–3).  The parties further held a telephone meet and confer on November 15, 2021, but were unable to resolve the issue (Tren. Dec. ¶ 2).

Since this problem first surfaced, the case for disqualification has only grown.  Shilpa has now served interrogatories and requests for production targeted specifically at the parties'

interactions in early 2016.  (Ex. G at 11–12 (RFPs about the early 2016 discussions); Ex. H at 7–8 (interrogatories about the early 2016 discussions).)  This is precisely the sort of information Mr. Iyer should not have access to as counsel given his role as a witness in this action.  Mr. Iyer's mere exposure to such documents will contaminate his memory.  No matter how earnest Mr. Iyer is in keeping his memory separate from his present advocacy, he cannot "un-see" the confidential materials.  This situation is exactly what the lawyer-witness rule is designed to prevent.  Upon review of Novartis's confidential materials, Mr. Iyer could, even inadvertently, shape his testimony about the 2016 discussions in a manner intended to help his client, confusing the two roles he finds himself in—witness and advocate.  Novartis accordingly must move to disqualify.

## ARGUMENT

"The Court has the inherent authority to supervise the professional conduct of attorneys appearing before it, including the power to disqualify an attorney from a representation." *Princeton Digital Image Corp. v. Off. Depot Inc.*, No. CV 13-239-LPS, 2017 WL 3573812, at *1 (D. Del. Aug. 17, 2017) (citing *U.S. v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980)).  "As a general rule, the exercise of this authority is committed to the sound discretion of the district court[.]" *Miller*, 624 F.2d at 1201.  The Court should exercise its discretion to disqualify Mr. Iyer.

Attorneys in this Court are "governed by the Model Rules of Professional Conduct of the American Bar Association."  D. Del. L. R. 83.6(d); *see also See Princeton Digital Image Corp.*, 2017 WL 3573812, at *1 (applying Model Rules).  Subject to irrelevant exceptions addressed below, Rule 3.7(a) provides that "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness[.]"  Yet that is exactly the position Mr. Iyer is in.  He is the only witness to Shilpa's side of the full 2016 discussions with Novartis.  Those discussions are central.  They are the basis for Shilpa's claims of willful and intentional direct and indirect infringement.

They are also likely relevant to royalty damages.  As the only Shilpa-side witness to those discussions, Mr. Iyer cannot also serve as Shilpa's counsel.

Shilpa should bear the burden of showing otherwise.  Shilpa and Mr. Iyer must have known before filing the Complaint that Mr. Iyer's testimony was central to willful and intentional direct and indirect infringement.  "When the attorney in question is so clearly aware before the fact of the potential conflict between his roles as advocate and witness, then the scrutiny usually applied to an opposing party's motion for disqualification is unnecessary, and the burden shifts to the attorney in question."  *Klupt v. Krongard*, 126 Md. App. 179, 207–08 (Md. 1999) (applying Maryland's identical version of Rule 3.7 and citing ABA, Annotated Model Rules of Professional Conduct 359 (3d ed. 1996) ("[I]f the lawyer knows before the litigation has commenced that his or her testimony might be required, then the burden is on the lawyer to establish an exception to the Rule if he or she is to avoid disqualification.")).

That makes sense.  Comment 4 to Rule 3.7 says "[i]t is relevant that one or both parties could reasonably foresee that the lawyer would probably be a witness."  This is not a situation where the movant has named the attorney as a witness for the movant as a pretext to seek disqualification—Novartis does not know how Mr. Iyer will testify, or which side his testimony will ultimately help.  Courts may put the burden on the movant when gamesmanship is suspected. *Klupt*, 126 Md. App. at 206; *Matter of Est. of Waters*, 647 A.2d 1091, 1096–97 (Del. 1994).  But here there is none.  Mr. Iyer should bear the burden of showing how his participation as counsel can possibly pass muster.

In any event, however the burdens are allocated, he should be disqualified.  The essential facts are undisputed—they come from Shilpa's own interrogatory responses.

## I.     The Court Should Disqualify Mr. Iyer

The Court should disqualify Mr. Iyer to protect the integrity of the trial process and avoid irreparable prejudice to Novartis, not to mention potential prejudice to Shilpa.

A lawyer who is also a witness "can prejudice the tribunal and the opposing party[,]" in addition to the lawyer's own client.  Model Rule 3.7, cmt. 1.  "[T]he trier of fact may be confused or misled by a lawyer serving as both advocate and witness" and "the combination of roles may prejudice" the opposing party's "rights in the litigation[,]" depending on "the nature of the case, the importance and probable tenor of the lawyer's testimony, and the probability that the lawyer's testimony will conflict with that of other witnesses[.]"  *Id.* cmts. 2, 4.

These factors all weigh against Mr. Iyer.  This is a patent damages case to be tried to a jury.  (*See* D.I. 1 at 17 ("Jury Trial Demanded").)  Disqualification is especially appropriate in jury cases, where the risk of confusion and prejudice from counsel's dual roles is highest.  *World Youth Day, Inc. v. Famous Artists Merch. Exch., Inc.*, 866 F. Supp. 1297, 1303 (D. Colo. 1994) (disqualifying an attorney because, *inter alia*, "there is a substantial risk that a jury will be confused by an advocate also appearing as a witness"); *Stewart v. Bank of America, N.A.*, 203 F.R.D. 585 (D. Ga. 2001) (same).  Plus, the 816 Patent claims a highly technical invention already likely to challenge a jury.  *See SenoRx, Inc. v. Hologic, Inc.*, 920 F. Supp. 2d 565, 571 (D. Del. 2013) ("[P]atent cases often implicate difficult subject matter that may be unfamiliar to most jurors.").  Compounding the confusion by allowing Mr. Iyer to serve as counsel will only make matters worse.

The case will also involve discovery of highly confidential documents of competitive and legal significance.  The parties accordingly have agreed to protective order provisions with multiple tiers that restricts a witness's access to protective material.  (*See* Ex. I at ¶¶ 2–5, 8–11.)  But Mr. Iyer, if not disqualified, would have unrestricted access to all tiers of Novartis documents—including any related to advice of counsel, should Novartis assert such a defense.

Shilpa recently served discovery seeking just such materials.  (*See* Ex. G at 11–12 (RFPs about the early 2016 discussions); Ex. H at 7–8 (interrogatories about the early 2016 discussions).)

That access would allow Mr. Iyer in his role as zealous advocate to shape testimony to Shilpa's advantage, even innocently—a direct conflict with his other role as sworn witness.  *See Waters*, 647 A.2d at 1097–98 (disqualifying counsel under Delaware's identical Rule 3.7; among other things, dual role threatens "the integrity of the judicial proceedings" because "the attorney may either be accused of distorting the truth for the client's benefit"); *see also Jones v. City of Chicago*, 610 F. Supp. 350, 362 (N.D. Ill. 1984) ("The major purpose behind the advocate-witness rule is to avoid confusion between the role of the advocate and the role of the witness.  The advocate's function is to advance or argue the cause of another, while that of a witness is to state facts objectively." (citation omitted)).  As a court has held in another patent case, potential testifying "counsel should not be given access to the defendant's information that could consciously or unconsciously affect their testimony regarding the patent-in-suit[.]"  *Andrx Pharmaceuticals, LLC v. GlaxoSmithKline*, PLC, 236 F.R.D. 583, 587 (S.D. Fla 2006) (denying potential testifying counsel access to protective order material).

Here, for instance, Shilpa claims Mr. Iyer told Novartis in 2016 that Gilenya infringed the 816 Patent.  (D.I. 1 ¶¶ 28, 49; Ex. A (Interrogatory Responses) at 10–11.)  That supposedly put Novartis on notice of infringement.  But that assertion conflicts with other parts of the interrogatories, which say that Shilpa did not test Gilenya for infringement until *after* speaking with Novartis.  (Ex. A at 8.)  Novartis believes the evidence is likely to show that Shilpa did not put Novartis on notice that Gilenya infringed the Patent.  That is the opposite of what the interrogatory responses say.  Thus, the details of what Mr. Iyer said and how Novartis responded will surely be probative of Novartis's state of mind, and hence willfulness and intent for direct and

indirect infringement.  Access to Novartis's internal documents could alter Mr. Iyer's testimony regarding that back-and-forth to Shilpa's advantage, consciously or unconsciously.  The lawyer-witness rule exists to protect against that risk.

Likewise, Mr. Iyer would also be involved in depositions.  This, too, would create an unacceptable taint to the proceedings.  As examining or defending counsel, Mr. Iyer "may, perhaps even inadvertently, interject unsworn testimony into the cross-examination of other witnesses." *Waters,* 647 A.2d at 1097–98; *see also* Geoffrey C. Hazard, Jr. & W. William Hodes, The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct 680 (2d ed. 1993) ("The interest of the opposing party protected by Rule 3.7 is parallel to that protected by Rule 3.4(e), which forbids an advocate from voicing personal opinions about the merits of a cause.").  Such conduct would prejudice not only Novartis, but also the tribunal; "[i]mmediate disqualification is warranted because [depositions] will undoubtedly involve obtaining evidence such that" counsel's "dual roles will be revealed at trial." *Turner v. AIG Domestic Claims, Inc.*, No. 4:10CV3159, 2011 WL 2632893, at *8 (D. Neb. July 5, 2011), *rev'd*, 823 F. Supp. 2d 899 (D. Neb. 2011).

Finally, even in arguments to the Court, Mr. Iyer's dual role would be inappropriate.  In arguments, Mr. Iyer "may be called upon by other evidence to argue his or her own credibility to the trier of fact," or "may, in effect, give 'unsworn' testimony during arguments to the trial judge and/or jury." *Waters*, 647 A.2d at 1098.

For all these reasons, Mr. Iyer's testimony easily meets the requirements of Rule 3.7—his testimony is "necessary"; no exception applies; and he should thus be disqualified from the case.

### A.    Mr. Iyer Is a "Necessary" Witness

Under any view, Mr. Iyer is likely to be a "necessary" witness.  "A lawyer is likely to be a necessary witness where the proposed testimony is relevant, material, not merely cumulative, and unobtainable elsewhere*." Carta ex rel. Est. of Carta v. Lumbermens Mut. Cas. Co.*, 419 F. Supp.

2d 23, 29 (D. Mass. 2006) (citing *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 239 F. Supp. 2d 1170, 1173 (D. Colo. 2003)); *see also* American Bar Association, Professional Responsibility in Litigation, 2016 Edition, Chapter 13: Lawyers as Witness, at 675 (lawyer "necessary" under Rule 3.7 if testimony "is relevant, material, not merely cumulative, and unobtainable elsewhere").  Mr. Iyer's testimony qualifies.

*First*, his testimony is relevant and material.  Shilpa itself cites Mr. Iyer as the only named witness to Shilpa's side of the licensing discussions, and relies on those discussions as evidence of willful direct and indirect infringement.

To show willfulness, Shilpa must provide "proof that the defendant knew about the asserted patents and knew or should have known that its conduct amounted to infringement of those patents."  *ZapFraud, Inc. v. Barracuda Networks, Inc.*, 528 F. Supp. 3d 247, 249 (D. Del. 2021) (citing *VLSI Tech. LLC v. Intel Corp.*, No. 18-966-CFC, 2019 WL 1349468, at *1 (D. Del. Mar. 26, 2019)).  To show induced and contributory infringement, Shilpa must show "proof that the defendant's conduct occurred after the defendant (1) knew of the existence of the asserted patent and (2) knew that a third party's acts constituted infringement of the patent."  *Id.* (citing *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015)).  Mr. Iyer is a firsthand witness to interactions that Shilpa contends provide this proof.

Shilpa suggested during the meet and confer process that Mr. Iyer's testimony is not "necessary" because Shilpa does not intend to call him as a witness.  But "the advocate-witness rule protects opposing parties and the integrity of the judicial system as a whole," so "the client's consent to the representation or willingness to forgo the lawyer's testimony will not prevent disqualification if the lawyer's testimony is deemed 'necessary.'"  Model Rule 3.7 (citing *Premium Prods., Inc. v. Pro Performance Sports*, LLC, 997 F. Supp. 2d 433 (E.D. Va. 2014); *MacArthur v.*

*Bank of N.Y.*, 524 F. Supp. 1205 (S.D.N.Y. 1981); *Freeman v. Vicchiarelli*, 827 F. Supp. 300 (D.N.J. 1993)).

For instance, even if Shilpa does not call Mr. Iyer, Novartis may do so (depending on the result of discovery between now and trial). Moreover, even if neither party calls Mr. Iyer, the 2016 discussions are likely to be a subject at trial. Any Novartis witness to those discussions will have to describe communications with Mr. Iyer. If not disqualified, he will be present in the courtroom but never put on the stand. That sets the stage for an "unsworn witness" problem—Mr. Iyer could argue with Novartis's testimony through cross-examination or commentary to the jury. As shown above (at 11), this is precisely one of the risks the lawyer-witness rule protects against.

**Second**, Mr. Iyer is the sole witness to Shilpa's side of the story, and his testimony is not merely cumulative. Indeed, he is the only witness Shilpa identifies by name to those discussions. The other unnamed witness are from non-Party Shilpa Medicare, an Indian company. Shilpa has not listed those witnesses in Rule 26(a) disclosures. (Ex. J.) There is no guarantee they will be available or subject to process. But even if they are, Shilpa admits that Mr. Iyer is the sole witness to at least two relevant phone conferences with Novartis in 2016, and possibly more. He is thus the sole source of Shilpa's side of the entire story.

During the meet and confer process, Shilpa suggested that Novartis witnesses and documents may suffice to establish the facts Mr. Iyer knows. This theory has no merit. Courts regularly find a lawyer-witness "necessary" when to tell one side's perspective on a disputed subject, even when there is other evidence of the interaction. For instance, in *Klupt*, the court applied Maryland's identical version of Rule 3.7 to disqualify counsel who had participated in negotiating the underlying patent license in dispute, even though the opposing party was involved in those negotiations too—a circumstance strikingly similar to the one here. 126 Md. App. at 209.

*See also SuperGuide Corp. v. DirecTV Enterprises, Inc.*, 141 F. Supp. 2d 616, 625–26 (W.D.N.C. 2001) (disqualifying patent licensee's former lead counsel, as prior work gave him knowledge of parties' course of conduct under license and it was possible he would be called as witness).

Similarly, in *General Mill Supply Co. v. SCA Services, Inc.*, 697 F.2d 704, 716 (6th Cir. 1982), the court found an attorney "necessary" in an abuse of process claim when the attorney was involved in a telephone conversation about the merits of the case—even though others participated in that conversation too.  And, in *VanNostrand v. New York Cent. Mut. Fire Ins. Co.*, 127 A.D.3d 851, 852 (2d Dep't 2015), an attorney involved in settlement negotiations was deemed necessary to providing one side's perspective.  The same is true in many other cases.[1]

Shilpa accordingly cannot rely on Novartis's evidence to remedy this situation of Shilpa's own making.

**B.     No Exception to Rule 3.7 Applies**

Rule 3.7 provides that a trial lawyer may sometimes be a witness in three limited circumstances, none of which applies here.  Mr. Iyer's testimony does not relate "to an uncontested issue," Model Rule 3.7(a)(1)—Novartis vigorously contests willful and indirect infringement. Novartis's Answer (D.I. 13) disputes every one of those allegations (*id.* ¶¶ 29–52).  Nor does his

---

[1]  *See, e.g.*, *Dunlap v. State Farm Fire & Cas. Co.*, 955 A.2d 132, 149 (Del. Super. Ct. 2007) (disqualifying lawyer who participated in telephone negotiations with insurance company in case against that company); *Weigel v. Farmers Ins. Co., Inc.*, 356 Ark. 617, 628 (Ark. 2004) (disqualifying lawyer in bad faith case against the insurance company concerning settlement negotiations involving the disqualified attorney); *Corona v. Hotel & Allied Servs. Union Loc. 758*, No. 04-CV-10074 (CSH), 2005 WL 2086326, at *8 (S.D.N.Y. Aug. 30, 2005) (disqualifying counsel involved in union negotiations in labor dispute even though other witnesses to the negotiations existed); *Finn v. Harbor Metal Treating Inc.*, No. 3:09-CV-130CAN, 2009 WL 3642753, at *4 (N.D. Ind. Oct. 29, 2009) (disqualifying attorney involved in one side of underlying negotiation of disputed contract); *Fuller v. Collins*, 114 A.D.3d 827, 829 (2d Dep't 2014) (disqualifying an attorney where attorney and adversary were sole source of contract discussions).

testimony relate to "the nature and value of legal services rendered in the case."  Model Rule 3.7(a)(2).  And his disqualification would not inflict "substantial hardship" on Shilpa.  *Id.* 3.7(a)(3).

The hardship exception applies only "where the lawyer-client team come unexpectedly upon a disqualification situation, against which they neither actually did nor could have safeguarded themselves."  *General Mill Supply Co.*, 697 F.2d at 713.  The exception is not "meant for a case where a possible disqualification dilemma was visible years before it arose, yet the parties went right on increasing the helpless dependence of client upon lawyer."  *Id.*  In other words, "[a] self-inflicted injury is not a hardship."  *Id.*[2]

So it is here.  Shilpa and Mr. Iyer had to know of his importance as a witness before commencing the litigation.  They cannot now complain of hardship.  Plus, this case is at an early stage, further mitigating any inconvenience to Shilpa.  *Massachusetts Sch. of L. at Andover, Inc. v. Am. Bar Ass'n*, 872 F. Supp. 1346, 1380 (E.D. Pa. 1994), *aff'd*, 107 F.3d 1026 (3d Cir. 1997) (no substantial hardship for disqualification where, among other things, "[t]he defendants' motions are timely," "[n]o trial date has been set[,] and discovery has barely begun"); *Carta ex rel. Estate of Carta*, 419 F. Supp. 2d at 32 (early disqualification causes less hardship; "little (if any) discovery has yet taken place in this case, so successor counsel would not have to come into a case that was already well underway").  Two other Sughrue partners have already appeared.  (D.I. 1, 16, 38.)

---

[2]  *See also Thomas Steel Corp. v. Ameri-Forge Corp.*, No. 91 C 2356, 1991 WL 280086, at *3 (N.D. Ill. Dec. 27, 1991*)* ("Arguments concerning the attorney's longstanding involvement in the litigation and the client's financial hardship are generally insufficient to invoke the 'substantial hardship' exception to Rule 3.7, particularly when the problem is largely of the party's own making."); *Jones*, 610 F. Supp. at 361 ("[C]ourts have generally rejected arguments that a lawyer's long-standing relationship with a client, involvement with the litigation from its inception or financial hardship to the client are sufficient reasons to invoke the 'substantial hardship' exception to the advocate-witness rule."—disqualifying attorney from all trial and pretrial proceedings and disqualifying attorney's firm from trial, but not pretrial proceedings).

Shilpa further is an experienced patent litigant that has used multiple firms for such litigation.[3]

Shilpa thus has many options.  Compared to the harm from allowing Mr. Iyer to remain as counsel,

the inconvenience to Shilpa in proceeding with other counsel will be miniscule.

### C.    Mr. Iyer's Disqualification Should Be Total

Although Rule 3.7 says that a lawyer-witness "shall not act … at a trial," courts can and do

disqualify counsel for the entire case, including both pretrial and trial.  The Third Circuit upheld

just such a disqualification in *U.S. v. Merlino*, 349 F.3d 144, 152 (2003), albeit in a criminal case.

Other courts regularly exercise their direction to make a blanket disqualification.[4]

---

[3]  For example, Shilpa has used the following law firms:  (i) Bayard, P.A., Carlson Caspers (*see Biogen MA Inc. v. Shilpa Medicare Limited*, No. 1:17CV00847 (D. Del. June 28, 2017)); (ii) Sills Cummis & Gross P.C. (*see Eisai R&D Management Co., Ltd. et al. v. Shilpa Medicare Limited*, No. 3:20CV06729 (D.N.J. June 1, 2020)); (iii) Smith, Katzenstein, & Jenkins LLP (*see Genentech, Inc. et al. v. Shilpa Medicare Limited*, No. 1:20CV00624 (D. Del. May 8, 2020); *Gilead Sciences, Inc. v. Apotex, Inc. et al.*, No. 1:20CV00189 (D. Del. Feb. 7, 2020); *Pharmacyclics LLC et al. v. Shilpa Medicare Limited et al.*, No. 1:18CV00237 (D. Del. Feb. 9, 2018); *Novartis Pharmaceuticals Corporation et al. v. Shilpa Medicare Limited*, No. 1:15CV01111 (D. Del. Nov. 30, 2014)); (iv) Benesch Friedlander Coplan & Aronoff (*see Sanofi-Aventis U.S. LLC et al. v. Shilpa Medicare Limited*, No. 1:19CV01975 (D. Del. Oct. 17, 2019); *OSI Pharmaceuticals, LLC et al. v. Shilpa Medicare Limited*, No. 1:18CV01096 (D. Del. July 25, 2018); *Amgen Inc. v. Shilpa Medicare Ltd.*, No. 3:18CV11157 (D.N.J. June 27, 2018)), and (v) Windels Marx (*see Genentech, Inc., et al. v. Apotex Inc., et al.*, No. 1:19CV00078 (D. Del. Jan. 14, 2019)).

[4]  *See, e.g.*, *Dunlap*, 955 A.2d at 149 (blanket disqualification for pretrial and trial); *Shipley v. Schlecker*, No. CIV.A. 2002-01-422, 2002 WL 32072579, at *2 (Del. Com. Pl. Dec. 2, 2002) (same); *Emerald Partners v. Berlin*, 564 A.2d 670, 680 (Del. Ch. 1989) (same); *In re Corp. Res. Servs., Inc.*, 576 B.R. 779, 789 (Bankr. S.D.N.Y. 2017), *rev'd and remanded*, 595 B.R. 434 (S.D.N.Y. 2019) (same); *Noval Williams Films LLC v. Branca*, 128 F. Supp. 3d 781, 792 (S.D.N.Y. 2015) (same); *iHealthcare, Inc. v. Greene*, No. 2:11 CV 396, 2012 WL 2026361, at *8 (N.D. Ind. June 5, 2012) (same); *Turner*, 2011 WL 2632893, at *8 (same); *E.E.O.C. v. Bardon, Inc.*, 2010 WL 323067, at *3 (D. Md. Jan. 19, 2010) (same); *Finn*, 2009 WL 3642753, at *4 (same); *Carta ex rel. Estate of Carta*, 419 F. Supp. 2d at 29 (same); *Corona*, 2005 WL 2086326, at *8 (same); *Stewart*, 203 F.R.D. at 588  (same); *Freeman*, 827 F. Supp. at 307 (same); *Sherwood Grp., Inc. v. Rittereiser*, No. CIV. 90-2414 (CSF), 1991 WL 87578, at *3 (D.N.J. May 20, 1991) (same); *Jones*, 610 F. Supp. at 362 (same); *Jensen v. Poindexter*, 352 P.3d 1201, 1208 (Okla. 2015) (same); *Abrishamian v. Washington Med. Grp., P.C.*, 216 Md. App. 386, 417 (Md. 2014) (same); *Rumpza v. Donalar Enterprises, Inc.*, 581 N.W.2d 517, 525 (S.D. 1998) (same).

*Klupt* is instructive.  There, the court applied Maryland's version of Model Rule 3.7 to disqualify an attorney who had negotiated the patent license in dispute.  126 Md. App. at 207–09. The court ordered disqualification shortly after the attorney filed the complaint and appeared in the case, and for all purposes.  *Id.* at 203–07.  This Court should do the same here.

As shown above (at 12–14), the nature of this case is such that Mr. Iyer's participation in pretrial proceedings will irreparably taint the case.  Only blanket disqualification can preserve the record's integrity.  Importantly, the issues on which Mr. Iyer claims to have evidence are very significant.  For example, proof of willfulness could entitle Shilpa up to treble normal damages. 35 U.S.C. § 284.  Gilenya sales from 2016 to 2020 were about $8.45 billion.[5]  A mere 1% royalty on that amount would be $84.5 million.  A willfulness finding could add as much as $169 million— or ten times that amount if the royalty awarded is 10%.  So there can be no dispute that Mr. Iyer's role as a witness has potentially weighty implications.  The adjudication of such a significant question should not be tainted by his presence as counsel.[6]

---

[5]  US Product Net Sales from 2018 Novartis Annual Report: +1,683 MM (2016) + 1,709 MM (2017); US Product Net Sales from 2020 Novartis Annual Report: +1,765 MM (2018) + 1,736 MM (2019) + 1,562 MM (2020).  Total from 2016 through 2020 = $8.45 billion.  (*See* Ex. K.)

[6]  At this stage of the case, the details of Mr. Iyer's testimony are unknown.  If his testimony ends up being at all adverse to Shilpa, then Sughrue itself may have a conflict, which may or may not be waivable by Shilpa.  "[I]f there is likely to be substantial conflict between the testimony of the client and that of the lawyer, the representation involves a conflict of interest that requires compliance with Rule 1.7."  Model Rule 3.7, cmts. 1, 6. "If … the testifying lawyer would also be disqualified by Rule 1.7 or Rule 1.9 from representing the client in the matter, other lawyers in the firm will be precluded from representing the client by Rule 1.10 unless the client gives informed consent under the conditions stated in Rule 1.7."  *Id.* at cmt. 7.  "Determining whether or not such a conflict exists is primarily the responsibility of the lawyer involved."  *Id.* at cmt. 6.  Novartis accordingly urges Sughrue to fully vet the issue, and reserves all rights in the event a conflict for the firm later becomes clear.

## II.    Alternatively, Mr. Iyer Should Be Barred from Most Pretrial Activities, and Trial

Courts sometimes bar counsel only from pieces of a case under Rule 3.7.  As shown above, this case is such that a blanket disqualification is the most practical result.  But if the Court were inclined to consider another route, then Mr. Iyer should be barred from at least the following aspects of the proceeding:

1.    Mr. Iyer should not receive access to any confidential Novartis documents, directly or indirectly.  (*See* above at 10 (quoting *Andrx*, 236 F.R.D.at 587).)  Such access would unfairly risk tainting Mr. Iyer's role as a witness, potentially shaping his testimony, whether consciously or unconsciously, in response to the evidence.

2.    Mr. Iyer should be barred from appearing at any depositions, both because confidential information may be discussed, and to avoid the "unsworn witness" problem.[7]  (*See* above at 11–13.)

3.    Mr. Iyer should be barred from participating at trial and any hearing with the Court that touches upon the 2016 licensing discussions with Novartis (other than as a witness).  (*See above* at 9–12.)

---

[7]  *See, e.g.*, *Northbrook Digital, LLC v. Vendio Servs., Inc.*, 625 F. Supp. 2d 728, 758 (D. Minn. 2008) (explaining "if an attorney witness conduct[s] depositions in this litigation" "[t]here is a risk that such evidence will reveal Wolfe's role as an attorney, which especially in complex patent litigation, may cause prejudice or confusion"); *World Youth Day, Inc.*, 866 F. Supp. at 1304 (disqualifying an attorney and prohibiting him from taking or defending depositions because, inter alia, "it is naive to believe that depositions are divorced from trial advocacy. . . . The skill of deposing counsel on direct and cross-examination is necessarily woven into the fabric of the trial itself."); *Lowe v. Experian*, 328 F. Supp. 2d 1122, 1126–27 (D. Kan. 2004) (disqualifying an attorney from trial and from taking or defending depositions because he was a necessary witness); *ASI, Inc. v. Aquawood, LLC*, No. 19-CV-0763 (JRT/HB), 2021 WL 2374864, at *6 (D. Minn. June 10, 2021) (barring attorney from "participat[ing] in the deposition of Brian Dubinsky, because the Court sees no reasonable way to mitigate against the potential confusion of Weisbrod as deposing attorney with Weisbrod as a witness with first-hand knowledge").

Even with these protections, Mr. Iyer's double role would still pose an unacceptable risk, and for that reason Novartis submits he should be disqualified outright.  But if the Court thinks otherwise, then Novartis respectfully submits that these are the minimum protections required.

## CONCLUSION

For the foregoing reasons, Novartis respectfully requests that the Court disqualify Chidambaram S. Iyer from further representing Shilpa in this action.

Dated:  November 22, 2021

OF COUNSEL:

Jane M. Love, Ph.D.
Robert W. Trenchard
Paul E. Torchia
Kyanna Sabanoglu
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166
Tel:  (212) 351-4000
jlove@gibsondunn.com
ptorchia@gibsondunn.com
ksabanoglu@gibsondunn.com

David Glandorf
GIBSON, DUNN & CRUTCHER LLP
1801 California Street, Suite 4200
Denver, CO 80202-2642
dglandorf@gibsondunn.com

Emily M. Whitcher
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive,
Irvine, CA  92612
ewhitcher@gibsondunn.com

Respectfully submitted,

MCCARTER & ENGLISH, LLP

*/s/ Daniel M. Silver*
Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, Delaware 19801
(302) 984-6300
dsilver@mccarter.com
ajoyce@mccarter.com

*Counsel for Defendant*
*Novartis Pharmaceuticals Corporation*