**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SHILPA PHARMA, INC., <br><br> Plaintiff, <br><br> v. <br><br> NOVARTIS PHARMACEUTICALS CORPORATION, <br> Defendant. | C.A. No. 21-558-MN |

**PLAINTIFF SHILPA PHARMA, INC.'S ANSWERING BRIEF IN OPPOSITION TO
NOVARTIS'S MOTION TO DISQUALIFY CHIDAMBARAM S. IYER AS
PLAINTIFF'S COUNSEL UNDER THE LAWYER-WITNESS RULE**

OF COUNSEL:

SUGHRUE MION, PLLC
Michael R. Dzwonczyk
Raja N. Saliba
2000 Pennsylvania Ave., NW
Washington, DC 20037
(202) 293-7060
mdzwonczyk@sughrue.com
rsaliba@sughrue.com

Dated: December 13, 2021

SMITH, KATZENSTEIN & JENKINS LLP
Neal C. Belgam (No. 2721)
Eve H. Ormerod (No. 5369)
1000 West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
nbelgam@skjlaw.com
eormerod@skjlaw.com

*Attorneys for Plaintiff Shilpa Pharma, Inc.*

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................1

FACTUAL BACKGROUND ................................................................................................3

ARGUMENT .......................................................................................................................6

    I.  Novartis's Motion fails to meet the legal requirements for disqualification .................6

        A.      Novartis has failed to show the existence of a conflict .............................9

        B.      Novartis has failed to demonstrate how the conflict will prejudice the
            fairness of the proceedings ......................................................................12

    II.  Mr. Iyer is not a necessary witness .......................................................................13

    III.  Disqualification of Mr. Iyer Would Create a Chilling Precedent .............................19

    IV.  Novartis's alternative requests for relief should be denied .......................................20

CONCLUSION ...................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ardemasov v. Citibank, N.A.*, 14 F. Supp. 3d 39 (D. Conn. 2014) ................................................. 9

*Brotech Corp. v. White Eagle Int'l Techs. Group*, No. 03-232, 2005 WL 8176385 (E.D. Pa. Mar. 16, 2005) ..................................................................................................................................... 20

*Brotherhood Ry. Carmen v. Delpro Co.*, 549 F. Supp. 780 (D. Del. 1982) ................................. 20

*Cannon Airways, Inc. v. Franklin Holdings Corp.*, 669 F. Supp. 96 (D. Del. 1987) ......... 7, 10, 13

*Cardoni v. Power Int'l*, 1990 WL 35307 (Del. Super. Mar. 27, 1990) ............................. 6, 11, 12

*Chapman Eng'rs, Inc. v. Nat. Gas Sales Co., Inc.*, 766 F.Supp. 949 (D. Kan. 1991) .................. 18

*Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1331 (Fed. Cir. 2010) ............................................ 15

*General Mill Supply Co. v. SCA Servs., Inc.*, 697 F.2d 704 (6th Cir. 1982) ............................... 18

*General Mills, Inc. v. Kellogg Co.*, No. 06-3686, 2007 WL 9735202 (D. Minn. July 11, 2007). 17

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93 (2016)........................................................... 16

*Hull-Johnson v. Wilmington Trust*, No. 96C-03-16, 1996 WL 769457 (Del. Super. Dec. 9, 1996) ........................................................................................................................................... 8

*In Re Appeal of Infotechnology,* 582 A.2d 215 (Del. 1990) .......................................................... 8

*In re Boy Scouts of Am.*, 630 B.R. 122 (D. Del. 2021) .................................................................. 6

*In re Fisker Auto. Holdings, Inc. S'holder Litig.*, No. 13-2100, 2018 WL 3991470 (D. Del. Aug. 20, 2018) ..................................................................................................................................... 6

*In re Straight Path Commc'ns, Inc.*, No. 2017-486, 2021 WL 2913069 (Del. Ch. July 12, 2021) ........................................................................................................................................... 8

*Johnson v. King*, No. 10-279, 2011 WL 13093127 (D. Wy. July 27, 2011) ................................ 18

*Kalmanovitz v. G. Heileman Brewing Co.*, 610 F. Supp. 1319 (D. Del. 1985) .............................. 7

*Leonard v. Univ. of Del.*, No. 96-360, 1997 WL 158280 (D. Del. Mar. 20, 1997) ............ 7, 10, 13

*Macheca Transp. Co. v. Phila. Indem. Ins. Co.*, 463 F.3d 827 (8th Cir. 2006)........................... 11

*McLeod v. McLeod*, No. 11C-03-111, 2014 WL 7474337 (Del. Super. Dec. 20, 2014).... 8, 10, 11

*Microsoft Corp. v. Immersion Corp.*, No. 07-936, 2008 WL 682246 (D. Or. Mar. 7, 2008)....... 18

*Netratings, Inc. v. NPD Group, Inc*., No. 03-295-SLR, 2003 WL 23112305 (D. Del. Dec. 11, 2003) ............................................................................................................... 7

*Nisus Corp. v. Perma-Chink Sys., Inc.,* No. 03-120, 2005 WL 6112992 (E.D. Tn. May 27, 2005) ................................................................................................................ 20

*O.S. De Braak, Ltd.v. Weymouth Equip. Corp.*, No. 86-404, 1987 WL 18093 (D. Del. Sept. 30, 1987) .............................................................................................................. 18

*Paretti v. Cavalier Label Co., Inc*., 722 F.Supp. 985 (S.D.N.Y. 1989)........................................ 17

*Regalo Int'l, LLC v. Munchkin, Inc*., 211 F. Supp. 3d 682 (D. Del. 2016).................................... 6

*Seth Co. Inc. v. U.S.C.I.R.,* No. 01-1584, 2002 WL 31959105 (D. Conn. Nov. 26, 2002) ........... 8

*Smith v. City of Owatonna*, 439 N.W.2d 36 (Minn. Ct. App. 1989)............................................. 18

*Speed Rmg v. Arctic Cat Sales,* No. 20-609, 2020 WL 12442105 (D. Minn. Aug. 21, 2020) ..... 14

*SuperGuide Corp. v. DirecTV Enters., Inc*., 141 F. Supp. 2d 616 (W.D.N.C. 2001).................. 18

*Takeda Pharms. U.S.A., Inc. v. West-Ward Pharm. Corp.*, 785 F.3d 625 (Fed. Cir. 2015)......... 15

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, No. 14-1006-RGA, 2015 WL 7257915 (D. Del. Nov. 17, 2015) ........................................................................................... 6

*Universal Athletic Sales Co. v. Am. Gym Recreational & Athletic Equip. Corp*., 546 F.2d 530 (3d Cir. 1976) .......................................................................................................... 13

*Vanda Pharms. Inc. v. West-Ward Pharms. Int'l Ltd.*, 887 F.3d 1117 (Fed. Cir. 2018)............. 15

*Vanguard Sav. & Loan Ass'n v. Banks,* No. 93-4627, 1994 WL 284222 (E.D. Pa. June 28, 1994) ................................................................................................................ 13

*VanNostrand v. New York Cent. Mut. Fire Ins. Co*., 127 A.D.3d 851 (2d Dep't 2015).............. 18

*Xerox Corp. v. Google, Inc.* 270 F.R.D. 182 (D. Del. 2010) ....................................................... 6

*Yoshimura v. Kaneshiro*, No. 18-38, 2019 WL 1905160 (D. Hi. Apr. 29, 2019*)*........................ 18

Shilpa Pharma, Inc. hereby files this Opposition to Novartis's Motion to Disqualify Chidambaram S. Iyer from representing Shilpa in this matter.

**INTRODUCTION**

Mr. Iyer is a partner at Sughrue Mion, PLLC, counsel to Plaintiff, and he has represented Shilpa in patent matters for at least seven years.  Declaration of Chidambaram S. Iyer ("Iyer Decl."), ¶ 2.

The Complaint in this case was filed in April 2021 and, among other things, described the circumstances under which Shilpa first provided notice of the '816 patent-in-suit to Novartis, including a meeting between representatives of each company in March 2016.  D.I. 1, ¶¶ 28, 49. Despite its lawyer having received written notice of the '816 patent from Mr. Iyer in early March 2016, Novartis waited six months after receiving the Complaint until the eve of having to produce its core technical documents in this case to assert a fictitious claim that it "just learned for the first time" of a "lawyer-witness problem revealed by the interrogatory responses." D.I. 42 at 6.  It seeks disqualification of Mr. Iyer based on communications between the Parties in early 2016.

Novartis's Motion is based entirely on several allegations in the Complaint as well as select portions of three of Shilpa's Interrogatory responses.  Novartis does not rely upon any substantive documents, emails, communications or witness testimony.  Novartis has not offered any testimony from any witness with knowledge of the facts underlying its Motion.  Nor has Novartis sought any discovery of Shilpa as to the relevant facts. Rather, it has stitched together disparate facts and allegations from Shilpa's filings and combined those with speculation and argument to support its disqualification narrative.  The record is threadbare at best, and cannot remotely prove by clear and convincing evidence the existence of a conflict between Mr. Iyer's alleged testimony and the interests of Shilpa, required to justify the extraordinary relief of disqualification.  Indeed, Novartis does not even acknowledge its burden to show that an actual conflict exists, let alone prove that

1

with facts.  Because there is no conflict, the Motion is speculative at best and completely baseless at worst.

Mr. Iyer's Declaration sets forth the narrow set of facts relating to the communications between the parties at issue in the spring of 2016, and includes all of Mr. Iyer's email correspondence with Peter Waibel, in-house counsel at Novartis with whom Mr. Iyer had previous dealings. Iyer Decl., ¶¶ 1-14.  That correspondence provided notice of the '816 patent to Mr. Waibel and Novartis -- a simple fact which Novartis cannot deny. A meeting followed including Mr. Iyer, Shilpa representatives and Mr. Waibel on March 17, 2016, in which Mr. Iyer advised that the claims of the '816 Patent were believed to applicable to Novartis's Gilenya® (fingolimod) product.  *Id.* at ¶ 6.  Mr. Iyer followed up with an email in April 2016 and a subsequent phone call.   However, despite the notice, there were no substantive discussions about details of infringement, or potential licensing terms.  *Id*. at ¶¶ 10, 12.

At trial, Shilpa intends to establish Novartis's knowledge of the '816 patent since March 2016 through discovery from Novartis, including Mr. Waibel and the email correspondence he received from Mr. Iyer.  Shilpa does not need Mr. Iyer's testimony to establish notice of the '816 patent to Novartis. Novartis has neither stated it intends to call Mr. Iyer as a witness nor sought any discovery in its haste to file the present motion.  Mr. Iyer's role as counsel to Shilpa is in a litigation advisory capacity, not as trial counsel, and Mr. Iyer has confirmed he will not act as an advocate at trial in this case (*id.* at ¶ 15).  This addresses any potential future concerns about his alleged dual role under Rule 3.7(a).  To disqualify Mr. Iyer completely would not only be contrary to precedent, but would be a drastic remedy based on the anemic record underlying this Motion. Disqualification in this case would having a chilling effect in scores of existing and future cases where a client's lawyer of choice routinely sends a notice letter to a potential infringer and, as a result, risks disqualification after pre-suit communications make him a "necessary witness" in the

underlying litigation.  Novartis's Motion does not meet the high burden required and unfairly seeks to deprive Shilpa of its counsel of choice, and it should be denied.

**FACTUAL BACKGROUND**

Shortly after the issuance of U.S. Patent No. 9,266,816 (the "'816 patent") on February 23, 2016, Mr. Iyer advised Novartis of the same and proposed an in-person meeting between the parties in New York in March 2016 to discuss that and other outstanding matters between the parties.  Iyer Decl., ¶¶ 6-7; D.I. 43-1 at 11-12.  On March 2, 2016, Mr. Iyer emailed Mr. Waibel proposing a meeting between the parties (Iyer Decl., ¶ 6) and on March 3, 2016, Mr. Iyer provided to Mr. Waibel the full patent number of the '816 patent directed to fingolimod.  *Id.* at ¶ 7.  On March 11, 2016, Mr. Iyer requested that Mr. Waibel confirm the time and location of the meeting (*Id.* at ¶ 8), and on March 15, 2016, Mr. Iyer advised Mr. Waibel that Dr. Akshaykany Chaturvedi, Mr. Vishnu Bhutada, and Mr. Janak Kastia of Shilpa would meet with him, and that Mr. Iyer would also try to attend.  Mr. Iyer further advised that in addition to the issued '816 patent, Shilpa had patent applications on fingolimod pending in India and the EU. *Id.* at ¶ 9, and Ex. B.  Mr. Waibel confirmed the communications by return email later that day.  *Id.*

On March 17, 2016, the three Shilpa representatives, Mr. Iyer, and Mr. Waibel met to discuss multiple matters; Mr. Waibel advised that they had not yet considered the applicability of the '816 patent to the Gilenya® product, but that they would do so and respond in due course. *Id.* at ¶ 10. No technical aspects relating to the '816 patent, Gilenya® or fingolimod hydrochloride were discussed at this meeting, and no details of potential licensing or financial aspects relating to the '816 patent were discussed.[1] *Id.*

---

[1]  Novartis argues that these discussions are "relevant to royalty damages." D.I. 42 p. 8. That is plainly false.  Mr. Iyer's declaration makes clear that financial terms or royalty arrangements were never discussed at the meeting or in any of the communications. Iyer Decl. at ¶¶ 10, 12.

On April 18, 2016, Mr. Iyer followed up with Mr. Waibel by email, again asking whether Novartis had considered the '816 patent. *Id*., ¶ 11, citing Ex. B.  At some point shortly thereafter, Mr. Iyer called Mr. Waibel to inquire about the '816 patent and was told that Novartis would revert if they had any interest. Novartis responded no further. *Id.* at ¶ 12.  No technical aspects relating to the '816 patent, Gilenya® or fingolimod hydrochloride were discussed on this call, and no specifics of potential licensing or financial aspects relating to the '816 patent were discussed. *Id.*

The Iyer Declaration presents the only communications between Shilpa, Mr. Iyer, and Novartis regarding the '816 patent (*Id.,* ¶¶ 13-14), and it provides the factual basis for Shilpa's statements in its Complaint that "[i]n March, 2016, Shilpa [ ] advised Novartis of the issuance of the '816 patent," of its "view that the GILENYA® Products were covered by one or more of its claims," and that "Novartis did not further respond to Shilpa's offer of a license."  D.I. 1 at ¶ 28; ¶49.

Novartis's Interrogatory No. 3 sought the factual bases for any contention that Novartis was aware of the Asserted Patent prior to the filing of the Complaint.  Shilpa responded with details regarding the allegations in the Complaint directed to notice of the '816 patent and pre-suit communications between the parties, describing the March 2016 meeting between the representatives of the parties as well as the correspondences described above.  It is irrelevant that Shilpa's representatives were "unnamed" in its response. D.I. 42, p. 4.  They are not required to be named, and Novartis knows who they are.[2]  And yet Novartis claims Mr. Iyer is "the sole witness to Shilpa's side of the story." D.I. 42, p. 13.

---

[2] In a November 22, 2021 letter, Novartis specifically asked that Dr. Akshaykany Kant Chaturvedi, Mr. Vishnu Bhutada, and Mr. Janak Kastia – all attendees at the March 17, 2016 meeting – be added to Shilpa's Default Standard Paragraph 3 disclosures.  Ex. 1, filed concurrently herewith.

Novartis's Interrogatory No. 4 sought the "[identity of ] . . . negotiations referencing. . . .the Asserted Patent." D.I. 43-1, p. 11.  Consistent with its Response to Interrogatory No. 3, Shilpa responded that "[o]ther than the matters referred to in Plaintiff's response to Interrogatory 3," there were none. D.I. 43-1, p. 12.

Novartis's Interrogatory No. 7 sought the basis of Shilpa's contention of willful infringement in Paragraph 51 of the Complaint.  Separately, it sought the basis for Shilpa's contention "that Defendants possessed or possesses the required mental state to be liable for indirect infringement, such as the contentions in Paragraphs 47 and 48 of the Complaint." *Id*. at 15.  Shilpa responded to the Interrogatory by referring to each of Paragraphs 51, 47 and 48 of the Complaint separately.  *Id*. at 15-17.  Nothing in its response to Interrogatory No. 7 states that Shilpa relies on any meeting with Novartis to provide notice of the '816 patent; in fact, express notice was provided in Mr. Iyer's March 3, 2016 email to Mr. Waibel.  Iyer Decl., ¶ 7, citing Ex. A.  Yet Novartis repeatedly and deliberately misrepresents that point to maintain its false narrative about Mr. Iyer's role as an alleged "necessary witness."  With regard to paragraphs 47 and 48 of the Complaint, Shilpa's response to Interrogatory No. 3 nowhere relies upon Mr. Iyer's discussions with Novartis as a basis to establish indirect infringement by Novartis.  The Interrogatory response is clear that Novartis's own actions provide the basis for its liability for induced infringement, not the views of Mr. Iyer.

Shilpa has repeatedly asked Novartis to identify what facts or purported testimony Mr. Iyer uniquely possesses that create a conflict and justify his disqualification, but Novartis has refused to provide any because it has no such facts and doing so would allegedly taint the record. *See e.g.*, D.I. 44-4 at 2; D.I. 48 at 2.  Although Novartis does not dispute having received correspondence identifying the '816 patent in advance of the March 2016 meeting, its Motion perpetuates the

narrative that the pre-suit meeting between the Parties is the only basis upon which it learned of the existence of the '816 patent.

## ARGUMENT

Disqualification of counsel is an "extreme remedy." *In re Boy Scouts of Am*., 630 B.R. 122, 134 (D. Del. 2021). Thus, "[c]ourts approach motions to disqualify with cautious scrutiny, mindful of a litigant's right to the counsel of its choice." *Regalo Int'l, LLC v. Munchkin, Inc*., 211 F. Supp. 3d 682, 687 (D. Del. 2016) (internal citations and quotations omitted).  When weighing that right to counsel of choice against other concerns, this Court has consistently favored allowing parties to use counsel of their choice over competing considerations.  *See, e.g., Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, No. 14-1006-RGA, 2015 WL 7257915 (D. Del. Nov. 17, 2015); *Xerox Corp. v. Google, Inc.* 270 F.R.D. 182, 185 (D. Del. 2010); and *In re Fisker Auto. Holdings, Inc. S'holder Litig*., No. 13-2100-DBS, 2018 WL 3991470, at *4 (D. Del. Aug. 20, 2018).  As Delaware courts have recognized, "[d]isqualification is a "weighty step" and it must be realized that the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons." *Cardoni v. Power Int'l*, 1990 WL 35307, at *2 (D. Del. Mar. 27, 1990), (citing *Delaware Trust Co. v. Brady*, 1988 Del. Ch. LEXIS 121, at *7 (Del. Ch. Sept. 14, 1988)).

Here, Novartis seeks to deprive Shilpa of its counsel of choice but it has failed to identify a single fact to which Mr. Iyer is uniquely positioned to testify, and it has failed to identify any issue whose underlying facts cannot be established by other evidence.  Novartis has not come close to meeting its heavy burden necessary to have Mr. Iyer disqualified.

## I.  Novartis's Motion fails to meet the legal requirements for disqualification

Novartis moves to disqualify Mr., Iyer based on Model Rule 3.7(a), which states that "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness[.]" Mr. Iyer is neither a "necessary witness" as shown herein, nor will he be an advocate at trial. Iyer

Decl., ¶ 15.  The Model Rules elevate the standards for disqualification in order to address a reality that this Court has recognized (and which certainly applies here): "motions to disqualify are often disguised attempts to divest opposing parties of their counsel of choice. The attempt by an opposing party to disqualify the other side's lawyer must be viewed as a part of the tactics of an adversary proceeding." *Kalmanovitz v. G. Heileman Brewing Co*., 610 F. Supp. 1319, 1323 (D. Del. 1985). Thus, "[t]he present, 'likely to be a necessary witness,' standard elevates the burden of proof needed to prevail on a disqualification motion." *Id.*

Following *Kalmanovitz*, this Court in *Cannon Airways, Inc. v. Franklin Holdings Corp*., interpreted Rule 3.7 of the Delaware Lawyers' Rules of Professional Conduct to "require[] the opposing party to bear a higher burden on a disqualification motion, permit[] the court to delay ruling until it can determine whether another witness can testify, and preclude[] disqualification if the lawyer's testimony would merely be cumulative."  669 F. Supp. 96, 100 (D. Del. 1987).  A decade later, this Court in *Leonard v. University of Delaware* stated that those "standards still hold true" for disqualification motions brought under Rule 3.7 of the Model Rules of Professional Conduct of the ABA, which governs here. No. 96-360-MMS, 1997 WL 158280, at *3 (D. Del. 1997); *see also* D. Del. LR 83.6(d) ("all attorneys admitted or authorized to practice before this Court . . . shall be governed by the [Model Rules]"). The Court in *Leonard* reasoned that:

> While *Cannon* interpreted Rule 3.7 of the Delaware Lawyers' Rules of Professional Conduct, its status as persuasive authority remains undiminished. The Delaware Rules of Professional Conduct are patterned after the ABA Model Rules of Professional Conduct, *In re Waters*, 647 A.2d 1091, 1095 (Del. 1994), and Rule 3.7 of the Delaware Rules is identical to the current ABA progenitor.

*Leonard*, 1997 WL 158280, at *3 n.9.  Following *Leonard*, this Court in *Netratings, Inc. v. NPD Group, Inc*. articulated the higher burden movants must meet when seeking disqualification: "[d]efendant NPD, as the moving party, has the burden to prove by clear and convincing evidence

that disqualification is mandated by the existence of a conflict of interest that will prejudice the fairness of these proceedings." No. Civ. 03–295–SLR, 2003 WL 23112305, at *1 (D. Del. Dec. 11, 2003),  (citing *IMC Global, Inc. v. Moffett*, No. 16387-NC, 1998 WL 942312, at *2 (Del. Ch. Nov. 12, 1998)).

Thus, to prove disqualification, a party must show by clear and convincing evidence: (1) the existence of a conflict and (2) prejudice to the fairness of the proceedings by clear and convincing evidence.  *Id.*  These requirements are well-recognized in disqualification motions brought under identically-worded Rule 3.7 of the Delaware Rules of Professional Conduct.  *See, e.g. In re Appeal of Infotechnology Inc*., 582 A.2d 215, 221 (Del. 1990); *Hull-Johnson v. Wilmington Trust*, No. 96C-03-16, 1996 WL 769457 (Del. Super. Dec. 9, 1996); *McLeod v. McLeod*, 2014 WL 7474337 (Del. Super. Dec. 20, 2014); *In re Straight Path Commc'ns, Inc*., No. 17-486-SG, 2021 WL 2913069 (Del. Ch. July 12, 2021).  Whether the movant's evidentiary burden is framed as "clear and convincing," "heavy," or "elevated," the existence of a conflict and prejudice must be shown to a high degree of certainty.[3]  Not only does Novartis fail to acknowledge its high evidentiary burden anywhere in its Motion, it brazenly urges the Court to disregard it entirely, stating "*however the burdens are allocated*, [Mr. Iyer] should be disqualified."  D.I. 42, p. 8.  Novartis's results-oriented demand should be denied in view of its disregard for the legal requirements attendant to the relief it seeks.

---

[3] Other jurisdictions similarly require a high standard of proof.  *Ardemasov v. Citibank, N.A*., 14 F. Supp. 3d 39, 46 (D. Conn. 2014) ("courts within this Circuit 'have required more than a showing that the testimony is relevant, material and necessary' to disqualify said counsel from representation." *Seth Co. Inc. v. U.S.C.I.R.,* No. 01-1584, 2002 WL 31959105, at *1 (D. Conn. Nov. 26, 2002) (citation omitted). Rather, a "high standard of proof" is required. *Id.* (*citing Evans v. Artek Sys. Corp*., 715 F.2d 788, 791 (2d Cir.1983)).

### A.      Novartis has failed to show the existence of a conflict

Novartis does not allege, let alone establish by clear and convincing evidence, the existence of a conflict between any testimony that might be offered by Mr. Iyer and the positions Shilpa will take in this case, as required by *Netratings.*  Unlike the cases Novartis cites which describe actual conflicts, its Motion contains mere musings of "potential conflicts" and "probability[ies]" of conflicts, rather than establish any actual conflict or even a likely conflict between Mr. Iyer's testimony and that of other Shilpa's witnesses.

Novartis has not established a conflict or prejudicial testimony for one simple reason: it cannot do so.  ***First***, Novartis had not sought to depose Mr. Iyer or otherwise determine what facts he may have that justify its present Motion, but the relevant facts are now of record.  Iyer Decl. Novartis's claims that Mr. Iyer has information relevant to "direct infringement, indirect infringement, willfulness" and "royalty damages" are squarely undermined by the record evidence, showing that the last email Mr. Iyer wrote to Novartis on April 18, 2016 asks whether Mr. Waibel had even reviewed the patent yet.  Iyer Decl., ¶ 11, citing Ex. A.  Asking whether Novartis had even considered the patent – one month after the short meeting between the Parties occurred– does not support Novartis's speculations suggesting the parties discussed anything more than the general applicability of the '816 patent to the product and the availability of a license, but not the technical merits of Novartis's infringement or any details of financial terms.

***Second***, even though Novartis characterizes Mr. Iyer as a witness to "key events" who participated in "key discussions" that are "central" to Shilpa's case and to "willful and direct and indirect infringement" (D.I. 42, pp. 1, 7), Novartis admits freely that it "does not know how Mr. Iyer will testify, or which side his testimony will ultimately help" (*id.* at 8), and that "[a]t this stage of the case, the details of Mr. Iyer's testimony are unknown."  *Id.* at 17, n. 6.  That mystery is now solved by Mr. Iyer's Declaration.  By speculating that "***If*** his testimony ends up being at all adverse

to Shilpa. . .," (D.I. 42 at 17, emphasis added), Novartis concedes that it has no basis upon which to argue that Mr. Iyer's testimony **will be** adverse to Shilpa.  And from the Iyer Declaration, it is clear that nothing in Mr. Iyer's possession is, or even remotely could be, adverse to Shilpa. Novartis's concessions that (1) it has no idea about the "key" facts about which Mr, Iyer is uniquely qualified to testify and (2) its speculation about "*if* his testimony ends up being at all adverse to Shilpa," doom its ability to show by clear and convincing evidence that there is a conflict with the testimony of other Shilpa witnesses or that his testimony will be adverse to Shilpa.  *Leonard,* 1997 WL 158280, at *3 (motion to disqualify defense counsel denied where counsel's testimony "would be either cumulative or beneficial, not antagonistic, to the defense."); *Cannon Airways, Inc. v. Franklin Holdings Corp.*, 669 F. Supp. 96, 101 (D. Del. 1987) (motion for disqualification denied where "[d]efendants[ ] have not pointed to any *factual conflict* regarding the timing of the incident *or the contents of the communications among the various parties*.") (emphasis added).

In any event, Mr. Iyer's Declaration and emails submitted herewith make clear that the scope of the Parties' communications in early 2016 is narrowly directed to providing notice of the '816 patent as applicable to Novartis's product-in-suit, a general mention of license availability, and following up with inquiries regarding potential interest by Novartis.  Iyer Decl.  It is telling that Novartis did not provide these communications to the Court with its Motion.  In any event, Novartis can no longer claim to be in the dark, and any future testimony of Mr. Iyer cannot possibly create a conflict with other Shilpa witnesses because it is not antagonistic to Shilpa's case.

In *McLeod*, the court denied a motion to disqualify counsel where (1) plaintiff failed to present clear and convincing evidence that the attorney sought to be disqualified had the information claimed, and (2) there was nothing in the record – other than the movant's allegation that the attorney worked in the Delaware legal community – substantiating that the attorney possessed the information sought by the movant. 2014 WL 7474337, at *4.  Like the plaintiff in

10

*McLeod*, Novartis here has failed to present any, let alone clear and convincing, evidence that Mr. Iyer possesses information "central" to issues in this case (Novartis admits it has no idea what information Mr. Iyer has or how he would testify), and nothing in this record substantiates the baseless assertions that Mr. Iyer possesses any information that would be antagonistic to Shilpa's case. *Cardoni,* 1990 WL 35307, at *2 ("The party requesting disqualification should be prepared to testify as to matters allegedly disclosed.").

Novartis argues the burden of proving Mr. Iyer should *not* be disqualified should shift to Shilpa, because Mr. Iyer 'should have known' before the litigation that he would be a likely witness. D.I. 42 at 8. But its argument collapses under its own circular reasoning where Novartis has not stated it will call Mr. Iyer as a witness, and it admits it has no idea what facts or testimony Mr. Iyer would offer or whose side his testimony would help. Novartis's continued insistence that Mr. Iyer is a necessary witness and may be adverse to Shilpa is simply incorrect attorney argument in view of the Iyer Declaration.

Novartis speculates that it "may" call Mr. Iyer, "depending on the result of discovery," but even if it does not, "the 2016 discussions are likely to be a subject at trial" (D.I. 42 at 13), even though Novartis admits it has no idea what facts or testimony Mr. Iyer would offer. *Id.* at 8, 17. Novartis's contradictory positions that it does not know the substance of Mr. Iyer's testimony but that he is a necessary witness to "key" facts that are "central" to this dispute cannot meet the high standard required to justify disqualification, and are undermined by Mr. Iyer's statements in his declaration in any event. *Macheca Transp. Co. v. Phila. Indem. Ins. Co.*, 463 F.3d 827, 833 (8th Cir. 2006) (disqualification reversed where "Philadelphia not only failed to identify the things to which Mr. Horvath would be the only one available to testify, but also failed to identify whether anyone would even call him as a witness.")

But Novartis does not stop there. Desperate to secure disqualification of Shilpa's counsel of choice without providing a single fact about his purported testimony or showing that any of his testimony would be antagonistic to Shilpa, Novartis argues that ***even if no one calls Mr. Iyer as a witness***, his presence in the courtroom somehow prejudices Novartis.  While Mr. Iyer is counsel of record for Shilpa, he is not going to be an advocate at trial, as discussed above.  Iyer Decl., ¶ 15. The "unsworn testimony" problem Novartis complains of does not exist where Mr. Iyer is not going to act as trial attorney.  *Cardoni*, 1990 WL 35307, at *1 (The unsworn testimony problems associated with a lawyer who acts as witness does not exist where subject counsel will not act as the trial attorney.).  Novartis's speculation about Mr. Iyer's role as a witness or an advocate and its unsupported statements about the prejudice it will suffer if Mr. Iyer is present in the courtroom are insufficient to show that a conflict exists, and plainly insufficient to support disqualification.

### B.      Novartis has failed to demonstrate how the conflict will prejudice the fairness of the proceedings.

Where Novartis (1) has not alleged or shown an actual conflict, (2) does not know the facts Mr. Iyer purportedly possesses or how he would testify (now set forth in the Iyer Declaration), and (3) has not stated it would call Mr. Iyer as a witness, it cannot demonstrate by clear and convincing evidence that the fairness of the proceedings would be affected by a purported conflict.  Novartis's complaints about "fairness to Novartis" ring hollow where it urges the Court to disregard the clear and convincing burden of proof it shoulders, fails to demonstrate an actual conflict as required under Delaware law, and fails to provide any specific facts that Mr. Iyer possesses that make him a necessary witness.

## II.  Mr. Iyer is not a necessary witness

In all but the three circumstances enumerated in Rule 3.7(a), a lawyer is prohibited from being an advocate at a trial where he is likely to be a necessary witness.[4]  Rule 3.7(a) places an even greater burden on the party seeking disqualification than mere proof that the attorney has "'crucial information' in his possession which must be divulged." *Cannon Airways,* 669 F. Supp. at 100-01. Evidence which may be obtainable elsewhere, or which is considered cumulative, will not be deemed "necessary."  *Leonard,* 1997 WL 158280 at *3. And here, where Mr. Iyer will not be an advocate at trial, the prohibitions of Rule 3.7(a) do not apply.

In addition, Rule 3.7(a) requires more than mere speculation that an attorney will be required to testify. *Vanguard Sav. & Loan Ass'n v. Banks*, No. 93-4627, 1994 WL 284222, at *2 (E.D. Pa. June 28, 1994)  ("The necessity standard requires more than mere speculation that counsel will be required to testify.").  Novartis's invocation of Rule 3.7(a) fails at this first stage, where it has only speculated that it "may" call Mr. Iyer to testify "depending on the result of discovery." (D.I. 42 at 13).  More than mere speculation is required.

Novartis cannot prove that Mr. Iyer has "crucial information" which "must be divulged" where, as a threshold matter, Novartis admits it "does not know how Mr. Iyer will testify, or "which side his testimony will ultimately help" and that "the details of Mr. Iyer's testimony are unknown." D.I. 42, pp. 8, 17. *Universal Athletic Sales Co. v. Am. Gym Recreational & Athletic Equip. Corp*., 546 F.2d 530, 538-39 n.21 (3d Cir. 1976), *cert. denied*, 430 U.S. 984 (1977).

Mr. Iyer's Declaration and cited emails provide the general extent of Mr. Iyer's knowledge, and confirm the plain reality that anything about which Mr. Iyer would testify will not be adverse

---

[4] ABA Model Rule 3.7(a). Those circumstances exist where the proposed testimony relates to uncontested issues or the nature and value of legal services, or where disqualification would work a substantial hardship on the client.

to any position of Shilpa's in this case. Iyer Decl., citing Exs. A, B.  Mr. Iyer is not a "key" witness with testimony "central" to the issues in this case because any information Mr. Iyer possesses can be introduced at trial through other sources, such as Mr. Waibel and/or others with knowledge. *Speed RMG v. Arctic Cat Sales*, No. 20-609, 2020 WL 12442105, at *11 (D. Minn 2020) ("[b]lanket allegations that an attorney's testimony is relevant to a party's claim is an insufficient basis upon which to discern whether the attorney "will truly be a 'necessary witness' in the sense that there are things to which he will be the only one available to testify.").

Novartis's argument that Mr. Iyer is the only named witness to "Shilpa's side of the licensing discussions" (D.I. 42, p. 12) is patently false where Shilpa representatives Dr. Akshaykany Chaturvedi, Mr. Vishnu Bhutada and Mr. Janak Kastia were all present at the March 2016 meeting and could testify to the substance – or lack thereof – of the discussions. Nor is Mr. Iyer a necessary witness to the one or two phone discussions with Mr. Waibel, because Mr. Waibel also participated in those discussions.  *Speed RMG,* 2020 WL 12442105, at *12 (denying motion for disqualification where both parties were present during negotiations to an agreement being litigated: "[a]lthough the Parties disagree as to the extent of Nichols' involvement in negotiations, the record presently before the Court indicates that *Plaintiffs, as well as, Nichols were directly involved* in negotiating the Agreement. . . .  Nichols attended various meetings as counsel for Plaintiffs, *but Plaintiffs also attended those meetings*. . .  the present record does not indicate that Nichols possesses knowledge of any relevant representations *that the Parties do not also possess themselves*.") (emphasis added).

Novartis's Motion also urges that Mr. Iyer is a witness to discussions that provide proof of infringement. D.I. 42 at 1, 6, 7, 8, 10-11, 12.  That too, is facially false.  Mr. Iyer notified Novartis with the patent number to Novartis on March 3, 2016, and Novartis thus had knowledge of Shilpa's '816 patent as of that date. I

yer Decl., ¶ 7, citing Ex. A.  As Mr. Iyer's Declaration makes clear, no technical aspects relating to the '816 patent, Gilenya® or fingolimod hydrochloride were discussed at the March 17, 2016 meeting. Iyer Decl., ¶ 10.   Contrary to Novartis's argument, proof of Novartis's *direct infringement* does not require any testimony from Mr. Iyer. (D.I. 42, p. 12).  As this Court is well aware, proof of direct infringement requires a comparison of the '816 patent's claim elements to Novartis's Gilenya® product and its fingolimod hydrochloride active ingredient.   No attorney testimony is required.

Nor is Mr. Iyer's testimony necessary to establish any aspect of induced or contributory infringement.   Induced infringement under § 271(b) requires knowledge of the patent, direct infringement, and specific intent to cause infringement, and not merely that the defendant had knowledge of the acts alleged to constitute inducement.  *Vanda Pharms. Inc. v. West-Ward Pharms. Int'l Ltd.,* 887 F.3d 1117, 1129 (Fed. Cir. 2018); *Takeda Pharms. U.S.A., Inc. v. West-Ward Pharm. Corp.,* 785 F.3d 625, 631 (Fed. Cir. 2015).  As stated, Novartis knew of the patent based on its counsel's receipt of an email identifying the patent by number. Iyer Decl., ¶ 7, citing Ex. A.  Evidence of Novartis's intent to cause others to infringe and the steps it took to do so are uniquely in the possession of Novartis and are not subjects on which Mr. Iyer can testify.  Iyer Decl.  As such, he is not a necessary witness to induced infringement.

Proof of contributory infringement under § 271(c) requires a patent owner to show: (1) that there is direct infringement, (2) that the accused infringer knew that the combination for which its components were being made was both patented and infringing, (3) that the component has no substantial non-infringing uses, and (4) that the component is a material part of the invention.  *See e.g., Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010).  Not one of those four evidentiary requirements depend on facts uniquely in the possession of Mr. Iyer, and Novartis nowhere tells us how they do.  Because proof of contributory infringement is based on evidence

showing what Novartis knew, the underlying facts are again in the hands of Novartis. They are not based on pre-suit discussions involving Mr. Iyer, and Mr. Iyer's Declaration makes clear that none of the 2016 communications between the parties relate to induced or contributory infringement.

Finally, Novartis posits that Mr. Iyer was a witness to discussions that provide evidence of willful infringement, stating that "what Mr. Iyer said and how Novartis responded will surely be probative of Novartis's state of mind." D.I. 42, p. 10. That is incomprehensible. Novartis had written notice of the patent on March 3, 2016. Novartis ignores the fact that proof of willfulness is a subjective inquiry rather than an objective one: "the subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 105 (2016). The focus of the willfulness inquiry is on Novartis's subjective beliefs and its actions. It is not based on Mr. Iyer's recollections of pre-suit communications with Novartis, where the evidence shows written notice. It is certainly not based on Mr. Iyer's impressions of "how Novartis responded." Because evidence of Novartis's subjective beliefs are uniquely in the possession of Novartis, Mr. Iyer is not a necessary witness for willful infringement. In any event, Mr. Iyer's Declaration makes clear that the parties' 2016 communications did not touch on the technical merits of the '816 patent, details of Novartis's product, details of infringement, willfulness or damages. Iyer Decl., ¶¶ 6-14, Exs. A & B.

Novartis denies having been put on notice of the '816 patent or of its infringement, stating "Shilpa did not put Novartis on notice that Gilenya infringed the Patent" (D.I. 42, at 10), and that Novartis "has disputed [ ] allegations" of notice and infringement (*Id.* at 3). But those statements are contradicted by its admissions that following its learning of the '816 patent in March 2016, "[u]ltimately, Novartis declined the license." *Id.* at 1. Novartis's contrary statements raise obvious

questions:  How can Novartis decline a license to a patent about which it was never notified?  How can Novartis decline a license to a patent without having first been made aware that one of its products infringes it or that it may require a license?  Having declared that it 'ultimately declined a license,' Novartis should not now be heard to say it never received notice of the patent or its alleged infringement, or that it disputes any testimony it posits Mr. Iyer may offer to the contrary.

Ignoring the facts of this case, Novartis argues that courts "regularly" find a lawyer to be a necessary witness "when to tell [sic] one side's perspective on a disputed subject, even when there is other evidence of the interaction." D.I. 42, p. 13.  That is inaccurate. District courts regularly deny disqualification when the motions are based on the routine activity of an attorney having participated in an agreement's negotiation or business negotiations.

For example, in *Paretti v. Cavalier Label Co., Inc*., plaintiff argued that defendant's counsel should be disqualified because he participated in three business meetings and drafted a shareholders and redemption agreement.  722 F. Supp. 985, 987 (S.D.N.Y. 1989). The district court rejected these arguments, noting that (1) there was no evidence that the attorney "said or did anything relevant to [the factual] issue at [the] meetings," (2) other individuals were present at the meetings and counsel's testimony would be "cumulative" and "mere surplusage," and (3) the "documents presumably speak for themselves," and to the extent they were ambiguous, the clients' testimony would be "the best evidence of what was intended." *Id*.

Likewise, in *General Mills, Inc. v. Kellogg Co.*, the Court denied a disqualification motion where the plaintiff's attorney "was actively involved in the negotiation and drafting of the agreement as counsel of record for General Mills," and after the agreement was sold to defendant, he filed the lawsuit concerning the sale. No. 06-3686, 2007 WL 9735202, at *1-2 (D. Minn. July 11, 2007). Among other things, the Court found that any disqualification argument was premature where it had not yet determined that a jury would need to "consider parol evidence to ascertain the

meaning of the assignment provisions." *Id.* at *3. Under similar circumstances, many other courts across the country have likewise denied disqualification.[5]

Novartis ignores such authority and cites a hodgepodge of cases that are readily distinguishable. D.I. 42 at 13-15. For example, in *General Mill Supply Co. v. SCA Services, Inc.*, 697 F.2d 704, 716 (6th Cir. 1982), a lawyer was found to be a necessary witness because he supplied an affidavit in support of a summary judgment motion providing substantive testimony about his conversation with another individual, not because of a pre-suit negotiation. Rule 3.7 was not implicated. In *SuperGuide Corp. v. DirecTV Enterprises, Inc.*, 141 F. Supp. 2d 616, 625–26 (W.D.N.C. 2001), counsel was a necessary witness because he used to represent the opposing party on substantially related subject matter. The motion in that case was brought under Model Rule 1.6, not under Rule 3.7, and it had nothing to do with Novartis's 'sole party representative' theory. In *VanNostrand v. New York Central Mutual Fire Insurance Co.*, 127 A.D.3d 851, 852 (2d Dep't 2015), the court disqualified the plaintiffs' attorney from representing the plaintiffs in that action because he represented plaintiff in an earlier underlying action that formed the basis of the present

---

[5] *See Microsoft Corp. v. Immersion Corp.*, No. 07-936RSM, 2008 WL 682246, at *3 (D. Or. Mar. 7, 2008) ("bald assertions are insufficient in the context of a motion to disqualify"); *Chapman Eng's, Inc. v. Natural Gas Sales Co., Inc.*, 766 F. Supp. 949, 959 (D. Kan. 1991) (denying motion to disqualify where an attorney would not be necessary witness and no other attorneys were in position to be lead trial counsel); *Johnson v. King*, No. 10-279, 2011 WL 13093127, at *4 (D. Wy. July 27, 2011) (finding it was "unclear" why the attorney would "be the only witness that could provide the necessary testimony," there were "three attorneys during the negotiations who could also provide testimony on the subject" and the plaintiff stated she did not intend to call the attorney at trial); *O.S. De Braak, Ltd. v. Weymouth Equip. Corp.*, No. 86-404, 1987 WL 18093, at *2 (D. Del. Sept. 30, 1987) ("Disqualifying [counsel] at this point because his testimony may prove useful in explaining or clarifying the [at-issue agreement] at some undetermined juncture would be imprudent, at the least."); *Yoshimura v. Kaneshiro*, No. 18-38, 2019 WL 1905160, at *8 (D. Hi. Apr. 29, 2019*); see also Smith v. City of Owatonna*, 439 N.W.2d 36, 43 (Minn. Ct. App. 1989).

action, and he was agreed to be an essential witness. The motion had nothing to do with Novartis's 'sole party representative' theory and Rule 3.7 was never invoked.

The cases Novartis relies upon are all inapt as they ordered disqualification based on the disqualified attorney's activities being central to the litigated issues (such as where counsel who drafted documents that are the subject of litigation), or adversity to a former client; they are not based on the kind of routine pre-filing communications (such as putting a defendant on notice of a patent owner's patent) as those involved here.

## III.    Disqualification of Mr. Iyer would create a chilling precedent

The extreme relief that Novartis is seeking would create a chilling effect on the practice of pre-suit negotiations in patent litigation and perhaps even for all commercial litigation.  Prior to filing a patent suit, a plaintiff, through counsel, often provides notice of the patent and seeks to initiate discussions with the defendant's counsel to seek resolution of the matter in advance of filing a lawsuit.  In fact, multiple pre-suit correspondences and phone calls between parties and their counsel is not uncommon.  The judicial system encourages this practice and Federal Rules are intended to further this public policy.

By its Motion, Novartis seeks to put a practical end to such pre-suit communications by asking this Court to create a rule that would make any counsel sending a notice letter a "necessary witness" in the underlying litigations, and ineligible to represent the clients upon whose behalf they negotiated.  Mr. Iyer's Declaration chronicles certain emails, a brief meeting and several and phone inquiries on Novartis's consideration of the '816 patent.  If the extreme relief that Novartis is seeking is granted, it will discourage counsel for prospective litigants from communicating with each other prior to the filing of a lawsuit in an effort to resolve disputes.  The Court should not lightly disturb longstanding practices that encourage dispute resolution without judicial intervention.

19

## IV.     Novartis's alternative requests for relief should be denied

On this record, Novartis's Motion seeking blanket disqualification should be denied.  And even if in the future it is determined that Mr. Iyer becomes a witness, Rule 3.7 "only bars representation at trial. An attorney may continue to represent a client in an action in which he will be called as a witness up to the actual trial in the case*." Brotech Corp. v. White Eagle Int'l Techs. Group,* No. 03-232, 2005 WL 8176385, at *2 (E.D. Pa. Mar. 16, 2005), (citing *George v. Wausau Ins. Co.,* No. 99-6130, 2000 WL 276915, at *2 (E.D. Pa. Mar. 13, 2000)); *Nisus Corp. v. Perma-Chink Sys.,* No. 03-120, 2005 WL 6112992, at *8 (E.D. Tn. May 27, 2005) ("While Rule 3.7 disqualifies a lawyer witness from acting as trial counsel, it does not necessarily require his complete disqualification from the case.").  Since Mr. Iyer will not act as an advocate trial, Rule 3.7 does not mandate his disqualification.

Having failed to make its case for disqualification, Novartis should not be entitled to any of the "alternative relief" it seeks in Section II, D.I. 42 at 18.  It is unfair to Shilpa and to the integrity of this process for Mr. Iyer to be barred from fully representing his client during the course of this litigation up to trial, where Mr. Iyer possesses no information adverse to Shilpa, and no Novartis documents could affect the sum and substance of his knowledge reflected in his declaration. *Brotherhood Ry. Carmen v. Delpro Co.*, 549 F. Supp. 780, 790 (D. Del. 1982) ("The Court will not impose the rather drastic sanction of disqualification only to find later, before the start of trial, that such action was not necessary.").

## CONCLUSION

For the foregoing reasons, Shilpa respectfully requests that the Court deny the Motion to disqualify Mr. Iyer with prejudice.

Dated:  December 13, 2021

SMITH, KATZENSTEIN & JENKINS LLP

OF COUNSEL:

/s/ Eve H. Ormerod
Neal C. Belgam (No. 2721)
SUGHRUE MION, PLLC                    Eve H. Ormerod (No. 5369)
Michael R. Dzwonczyk                  1000 West Street, Suite 1501
Raja N. Saliba                        Wilmington, DE 19801
2000 Pennsylvania Ave., NW            (302) 652-8400
Washington, DC 20037                  nbelgam@skjlaw.com
(202) 293-7060                        eormerod@skjlaw.com
mdzwonczyk@sughrue.com
rsaliba@sughrue.com                   Attorneys for Plaintiff Shilpa Pharma, Inc.