# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SHILPA PHARMA, INC., | C.A. No. 21-558 |
| Plaintiff, | JURY TRIAL DEMANDED |
| v. | |
| NOVARTIS PHARMACEUTICALS CORPORATION, | |
| Defendant. | |

**NOVARTIS'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISQUALIFY CHIDAMBARAM S. IYER AS PLAINTIFF'S COUNSEL UNDER <u>THE LAWYER-WITNESS RULE</u>**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................................. 1

ARGUMENT .................................................................................................................................. 2

    I.      Mr. Iyer's Involvement as Counsel Prejudices Novartis and the Proceeding's Integrity ................................................................................................ 2

    II.     Mr. Iyer Is a "Necessary" Witness Regardless of Any Conflict with Shilpa .......... 6

CONCLUSION ............................................................................................................................. 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Andrx Pharms., LLC v. GlaxoSmithKline, PLC*,
  236 F.R.D. 583 (S.D. Fla. 2006) ................................................................................................2

*In re Appeal of Infotechnology, Inc.*,
  582 A.2d 215 (Del. 1990) ..........................................................................................................7

*APS Tech., Inc. v. Vertex Downhole, Inc.*,
  No. 19-1166 (MN), 2020 WL 4346700 (D. Del. July 29, 2020) ...............................................3

*Cannon Airways, Inc. v. Franklin Holdings Corp.*,
  669 F. Supp. 96 (D. Del 1987) ...................................................................................................7

*Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC*,
  879 F.3d 1332 (Fed. Cir. 2018) ..................................................................................................3

*Freeman v. Vicchiarelli*,
  827 F. Supp. 300 (D.N.J. 1993) .................................................................................................4

*General Mill Supply Co. v. SCA Services, Inc.*,
  697 F. 2d 704 (6th Cir. 1982) ....................................................................................................9

*Hull-Johnson v. Wilmington Trust*,
  No. 96C-03-016, 1996 WL 769457 (Del. Supr. Dec. 9, 1996) ..................................................7

*Klupt v. Krongard*,
  126 Md. App. 179 (Md. 1999) ...................................................................................................7

*Leonard v. Univ. of Delaware*,
  No. 96-360-MMS, 1997 WL 158280 (D. Del. 1997) ................................................................7

*McLeod v. McLeod*,
  No. N11C-03-111 MJB, 2014 WL 7474337 (Del. Super. Ct. Dec. 20, 2014) ...........................7

*Netratings, Inc. v. NPD Group, Inc.*,
  No. 03-295-SLR, 2003 WL 23112305 (D. Del. Dec. 11, 2003) ............................................6, 7

*In re Straight Path*,
  No. 17-0486-SG, 2021 WL 2913069 (Del. Ch. July 12, 2021) ..................................................7

*SuperGuide Corp. v. DirectTV Enterprises, Inc.*,
  141 F. Supp. 2d 616 (W.D.N.C. 2001) ......................................................................................9

**PRELIMINARY STATEMENT**

Shilpa concedes that Mr. Iyer had three discussions about the 816 Patent with Novartis in 2016, including two one-on-one phone calls. Shilpa further does not dispute that exposure to confidential information he would receive as counsel could taint Mr. Iyer's memory of those discussions in his other role as a fact witness. That risk, among others, is why he should be disqualified under Rule 3.7.

Mr. Iyer's declaration cements his testimony as necessary. He allegedly twice told Novartis that Gilenya® infringed the 816 Patent. Novartis disputes that claim—Mr. Iyer never said Gilenya infringed. Nothing on the Patent's face suggests he would have. The Patent claims a supposedly new solid form, or "polymorph," of fingolimod called "Form beta," made with a specific process. But the specification distinguishes Form beta from the prior-art form used in Gilenya, called "Form I." Thus, rather than threaten an infringement suit in 2016, Mr. Iyer pitched an "opportunity" for Novartis to license the Patent to use against generic manufacturers that might use Form beta. When Novartis declined, there was no reason to believe the Patent was being infringed. Shilpa's five-year delay in bringing suit only reinforced that view.

This dispute makes Mr. Iyer the definition of a "necessary" witness under Rule 3.7. As Shilpa concedes, his alleged statements in 2016 undergird the Complaint's claim of willful and intentional direct and indirect infringement. True, as Shilpa says, Mr. Iyer's testimony is also relevant to Novartis's notice of the patent, an undisputed issue. But that is not why his testimony matters. Rather, he is witness to conversations probative of Novartis's alleged state of mind in continuing to make Gilenya after receiving notice of the Patent. Shilpa does not dispute that potentially tens or hundreds of millions of dollars may turn on the resolution of that question.

1

Mr. Iyer thus cannot serve as counsel, and Shilpa identifies no particular prejudice from having to replace him. The Court should disqualify him to preserve the proceeding's integrity.

## ARGUMENT

### I. Mr. Iyer's Involvement as Counsel Prejudices Novartis and the Proceeding's Integrity

Novartis's moving brief shows (D.I. 42 at 9–11) that, as counsel, Mr. Iyer would be exposed to confidential information in document and deposition discovery that could taint his memory and testimony. In barring Mr. Iyer from Novartis confidential information pending this motion, Magistrate Judge Fallon recently confirmed that "Mr. Iyer's viability as a fact witness would be compromised by his access to confidential information," which "'could consciously or unconsciously affect [] testimony regarding the patent-in-suit[.]'" (December 2, 2021 Oral Order (quoting *Andrx Pharms., LLC v. GlaxoSmithKline, PLC*, 236 F.R.D. 583, 587 (S.D. Fla. 2006).)) That could prejudice Novartis and the proceeding's integrity.

Shilpa's opposition nowhere addresses this problem. Instead, Shilpa argues that Mr. Iyer's declaration "narrow[s]" the 2016 interactions "to providing notice of the '816 patent as applicable to Novartis's product-in-suit, a general mention of license availability, and following up[.]" (D.I. 53 at 10.) Mr. Iyer's declaration is no answer—it just highlights the problems with his role in this case. To begin with, the declaration is expressly based on current "knowledge and recollection" (D.I. 54 ¶ 14)—exactly the knowledge and recollection that may be affected by access as counsel to confidential information.

Nor, in any event, are the issues narrow and undisputed, as Shilpa contends. (D.I. 53 at 2, 5–6.) Mr. Iyer says he twice told Novartis of "Shilpa's belief in [the Patent's] applicability to Novartis's product," Gilenya. (D.I. 54 ¶ 6; *see id.* ¶ 10.) Likewise, Shilpa's interrogatory responses complain that Novartis "never provided a basis for demonstrating a good faith belief

that their Gilenya® product was not covered by one or more claims of the '816 patent." (D.I. 43-1, Ex. A at 16.) This is a central issue.

Proof of willful and intentional direct and indirect infringement requires more than mere notice of the Patent. Shilpa must show that Novartis "deliberately or intentionally infringed a patent-in-suit after obtaining knowledge of that patent *and its infringement*." *APS Tech., Inc. v. Vertex Downhole, Inc.*, No. 19-1166 (MN), 2020 WL 4346700, at *4 (D. Del. July 29, 2020) (emphasis added, citation omitted). Similarly, for induced infringement, Shilpa must show that Novartis "'knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent.'" *Id*. at 3 (citation omitted). These are issues "for the jury, not the district court." *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC*, 879 F.3d 1332, 1353 (Fed. Cir. 2018). Thus, what was said—and *not* said—in the 2016 discussions are centrally relevant, and must be presented to the jury.

These are disputed issues, as Novartis said in its opening brief. (D.I. 42 at 3, 14.) Novartis believes the evidence will show that Mr. Iyer never said that Gilenya infringed the 816 Patent. He instead pitched an "opportunity" for Novartis to license the Patent to use against generic fingolimod makers then in litigation over Gilenya. Even at this early stage of the case, the evidence in that direction is substantial:

- The Patent describes a supposedly new process of making fingolimod, which allegedly yielded a new polymorph called Form beta. (D.I. 1-1 at 4:63-6:15.) But Shilpa's Complaint never alleges that Novartis uses this process, and the Patent itself cites Novartis prior art (Mutz) as disclosing different polymorphs: Forms I, II, III, and a hydrate form. (*Id*. at 1:47-56 (discussing the "Mutz" reference).) As the Complaint concedes, Gilenya contains "Form I." (D.I. 1 ¶ 38 (describing Mutz as disclosing

3

- Novartis's polymorph); *see also id.* ¶¶ 43, 44.)  The Patent thus provides no reason on its face for Novartis to believe Gilenya infringes.

- None of the emails Mr. Iyer sent Novartis in 2016 allege that Gilenya infringes the 816 Patent.  (D.I. 54-1–54-4.)  To the contrary, one email refers to "Fingolimod" generically and not Gilenya in particular, and even thanks Novartis for the "opportunity" to discuss a license of the Patent.  (D.I. 54-2.)

- Novartis never brought a declaratory judgment action or an IPR to challenge the Patent —acts that would be consistent with an allegation of infringement, but are absent here.  And Shilpa itself waited five years to file suit.

- Shilpa admits to having not analyzed Gilenya's alleged infringement of the Patent until *after* the early 2016 discussions, according to Shilpa's interrogatory responses.  (D.I. 43-1 Ex. A at 8.)  Shilpa thus would have lacked a good-faith basis to allege that Gilenya infringed in the 2016 discussions.

No doubt, other evidence will be developed in discovery on these points, too.  Shilpa complains that Novartis moved to disqualify before developing that record.  (D.I. 53 at 1.)  (Paradoxically, Shilpa also complains that Novartis should have moved at the outset of the case, before Shilpa disclosed Mr. Iyer's role.  (*See id.*))  But the law demands that lawyer-witness problems be raised promptly after surfacing, at risk of waiver.[1]  Here, the issue is acute.  A major goal of this motion is to prevent Mr. Iyer from being tainted by exposure to confidential

---

[1] "Courts encourage litigants to move to disqualify as soon as they recognize ethical conflicts; this practice discourages strategic procedural behavior and mitigates the amount of time and money spent before applying ethical rules of conduct." *Freeman v. Vicchiarelli*, 827 F. Supp. 300, 303–04 (D.N.J. 1993).

4

information in discovery. It would defeat that purpose to move to disqualify only after that harm is realized.

Shilpa argues that Mr. Iyer's promise not to "advocate at trial" can prevent his disqualification and allow him to serve pre-trial as a "litigation advisor." (*Id.* at 2.) But Shilpa does not dispute that courts have discretion to, and routinely do, disqualify counsel from pre-trial proceedings under the lawyer-witness rule. Novartis's moving brief cites almost 20 cases doing so. (D.I. 42 at 16–18.) Shilpa ignores all of them.

Just such a blanket disqualification is the right result here. Mr. Iyer's memory and testimony are necessary for trial. His participation as counsel until then would still taint him. Just as troubling, as a litigation advisor, Mr. Iyer will still be deposed, may defend depositions, and may depose Novartis witnesses. In that context, he will be free to shape the record and misuse his knowledge as witness, even inadvertently. Transcripts of one or more depositions involving Mr. Iyer are virtually certain to be relevant evidence at trial—in other words, he will be present at trial whether or not he is actually at counsel table. Novartis's moving brief spotlights this exact problem (*id.* at 11, 18), which Shilpa's opposition completely fails to address.

Mr. Iyer's declaration illustrates the problem with his two roles in this case. He and Shilpa strive to narrow the scope of what was discussed in 2016 to preserve his role as counsel, even to the point of inconsistency with Shilpa's interrogatory responses. Mr. Iyer now says he spoke to Novartis only three times, whereas the interrogatory responses say he spoke to Novartis on "several occasions," including "one or more times" in April 2018. (*Compare* D.I. 54 ¶¶ 6, 7, 10, 12 *with* D.I. 43-1, Ex. A at 11, 16.) Mr. Iyer now says no technical details were discussed, whereas the interrogatory responses say that the "applicability of the '816 patent" was discussed repeatedly. (*Compare* D.I. 54 ¶¶ 10, 12 *with* D.I. 43-1, Ex. A at 11, 16.) These inconsistencies may be

5

innocent, but Mr. Iyer's concurrent roles as both lawyer and witness creates a cloud over these answers, among others, that can only be resolved by his disqualification.

## II. Mr. Iyer Is a "Necessary" Witness Regardless of Any Conflict with Shilpa

Novartis's motion to disqualify is based on the lawyer-witness rule embodied in Model Rule 3.7. Novartis is not moving to dismiss due to a client conflict between Mr. Iyer and Shilpa under Model Rules 1.7 or 1.9. Accordingly, Shilpa's extended discussion of cases under the client conflict rules are of no moment.

Rule 3.7 provides that a "necessary" witness may not also serve as counsel, and further that, if the lawyer's testimony is adverse to the client, then the lawyer's firm may also be disqualified under Rules 1.7 and 1.9. In other words, a conflict between the lawyer's testimony and the client's interests can create a problem for the firm, but that is not what matters for purposes of the lawyer-witness rule. That makes sense. Avoiding client conflicts is not the main point of the rule, which is "a prophylactic measure intended to protect the client, the adversary, the fact-finder, and the justice system as a whole." American Bar Association, Professional Responsibility in Litigation, 2016 Edition, Chapter 13: Lawyers as Witness, at 683.

Despite this self-evident proposition, Shilpa argues that Novartis must show a clear and convincing conflict of interest between Mr. Iyer's testimony and Shilpa's interests to prevail on this motion. (D.I. 53 at 9–12.) Shilpa thus implicitly challenges the standard for assessing whether Mr. Iyer is a "necessary" witness set out in Novartis's opening brief (D.I. 42 at 11–12)—that the lawyer's potential testimony is "relevant, material, not merely cumulative, and unobtainable elsewhere." As Novartis's brief makes clear, that standard is drawn directly from the ABA, the rules of which this Court applies.

6

Shilpa must raise the legal standard because otherwise, Mr. Iyer's knowledge of the 2016 discussions manifestly requires disqualification. Shilpa relies on *Netratings* to argue that disqualification requires clear and convincing proof of "'the existence of a conflict of interest that will prejudice the fairness of these proceedings.'" (D.I. 53 at 7–8 (quoting *Netratings, Inc. v. NPD Group, Inc.*, No. 03-295-SLR, 2003 WL 23112305, at *5 (D. Del. Dec. 11, 2003).) *Netratings*, however, is not a lawyer-witness case. It is an attorney-conflict case. The defendant there challenged that the plaintiff's general counsel had an attorney-client relationship with the defendant "during prior litigation between these parties." *Netratings*, 2003 WL 23112305 at *1. In that context, it makes sense for a movant to show a clear conflict that taints the proceedings.[2] An adversary's potential attorney-client conflict may or may not prejudice the opponent or taint the proceeding. But a lawyer-witness is far more likely to prejudice the Court and the adversary, so long as the witness's testimony is "necessary," as defined by the ABA.[3]

Thus, as shown in Novartis's opening brief (D.I. 42 at 8), here, it is Shilpa that should bear the burden of showing compliance with Rule 3.7. Shilpa admits in opposition (D.I. 53 at 4–5) that

---

[2] Two other cases Shilpa cites (at 8) for this standard are likewise either straight attorney-conflict cases or mixed attorney-conflict and lawyer-witness cases. *See In re Appeal of Infotechnology, Inc.*, 582 A.2d 215 (Del. 1990) (attorney-conflict case under Model Rule 1.7); *Hull-Johnson v. Wilmington Trust*, No. 96C-03-016, 1996 WL 769457 (Del. Supr. Dec. 9, 1996) (citing Shilpa's standard only in context of attorney-client conflict under Rule 1.7, and citing regular "necessary witness" standard in lawyer-witness context under Rule 3.7). The opinion in *McLeod v. McLeod*, No. N11C-03-111 MJB, 2014 WL 7474337, at *2 (Del. Super. Ct. Dec. 20, 2014) mistakenly relies on attorney-conflict case *In re Appeal of Infotechnology* for its standard. And *In re Straight Path*, No. 17-0486-SG, 2021 WL 2913069 (Del. Ch. July 12, 2021) did not even involve a motion to disqualify.

[3] Shilpa cites (at 7) *Cannon Airways, Inc. v. Franklin Holdings Corp.*, 669 F. Supp. 96 (D. Del 1987) and *Leonard v. Univ. of Delaware*, No. 96-360-MMS, 1997 WL 158280 (D. Del. 1997) to argue that Rule 3.7 adopted a heightened standard for disqualification under the lawyer-witness rule compared to the prior version of that rule under DR 5–101(B). That is true, and the standard for a necessary witness articulated by the ABA and cited in Novartis's moving brief indeed is more rigorous than the prior "ought to be called" standard under the old Code section.

7

Mr. Iyer's conversations with Novartis formed the basis for allegations of willful and intentional direct and indirect infringement in the Complaint (*see* D.I. 1 ¶¶ 28, 47–51). Shilpa thus knew in advance about the lawyer-witness problem.

In that context, comments to the ABA rules and the opinion in *Klupt v. Krongard*, 126 Md. App. 179, 207–08 (Md. 1999) put the burden on Shilpa to prove compliance with the rule. Shilpa ignores the ABA comment and *Klupt* in opposition, and simply asserts instead that this burden involves "circular reasoning" because, according to Shilpa, Mr. Iyer is not a proper witness. (D.I. 53 at 11.) But as shown above, the facts show otherwise—Mr. Iyer is a necessary witness with knowledge of key events, and he and Shilpa were on notice of that before filing the Complaint.

In any event, as Novartis's brief also makes clear, Mr. Iyer must be disqualified under any standard. (D.I. 42 at 8.) For instance, even if Shilpa's standard applies, the record shows that Mr. Iyer's testimony in fact is adverse to Shilpa's position that Novartis's alleged direct and indirect infringement was willful and intentional. Mr. Iyer's (unrefreshed) claim (at D.I. 54 ¶¶ 10, 12) that he discussed no "technical aspects" with Novartis to explain why Gilenya infringed undermines the notion of any deliberate infringement—especially in view of the other evidence pointing away from infringement shown above (at 3–4). Likewise, Mr. Iyer's admitted failure to accuse Novartis of infringement in contemporaneous emails points the same way, against Shilpa's interests. These inconsistencies with Shilpa's allegations of willfulness and intent may indeed create conflict issues for Mr. Iyer's firm, Sughrue, as Novartis pointed out in its moving brief. (D.I. 42 at 17.)

Shilpa argues also that Mr. Iyer's disqualification can be avoided by reliance on evidence from Novartis. (D.I. 53 at 14.) However, Shilpa does not dispute that Mr. Iyer participated in at least two one-on-one phone calls with Novartis about the 816 Patent. (D.I. 54 ¶¶ 6, 7, 12.) His

version of events clashes with what Novartis believes the evidence will show, as recited above (at 3–4). Mr. Iyer is thus the only source of Shilpa's side of the story, as shown in Novartis's opening brief. (D.I. 42 at 1, 11–14.)

Novartis showed that courts routinely find an attorney's testimony "necessary" under Rule 3.7 in these circumstances. (*Id.* at 13–15.) Shilpa purports to distinguish some of these cases. But these distinctions do not work. (D.I. 53 at 18.) For instance, Shilpa says Rule 3.7 was not implicated in *General Mill Supply Co. v. SCA Services, Inc.*, 697 F. 2d 704 (6th Cir. 1982). True, but the predecessor version of the lawyer witness-rule was. *Id.* at 714–17 (discussing applicability of DR 5-101(B) and 5-102(A).) Likewise, Shilpa says the motion in *SuperGuide Corp. v. DirectTV Enterprises, Inc.*, 141 F. Supp. 2d 616 (W.D.N.C. 2001) was brought under a different rule—ignoring that Rule 3.7 was an alternative ground. *Id.* at 622–23. And Shilpa in general wholly ignores the many cases Novartis collected for this principle. To be sure, the facts in other cases Shilpa cites may lead to a different result. (D.I. 53 at 17.) But the facts here compel the conclusion that Mr. Iyer is a necessary witness to a central issue—deliberate infringement—and that he must be disqualified to preserve the proceeding's integrity.

Shilpa also argues (*id.* at 9–10) that Novartis's inability pre-discovery to commit to calling Mr. Iyer as a trial witness shows his testimony is not "necessary." That is not the standard, though in fact Novartis has listed Mr. Iyer as a witness in Rule 26(a) disclosures. (*See* Ex. L, Nov. 4, 2021 Rule 26(a) Disclosures.) Mr. Iyer's testimony is "'relevant, material, not merely cumulative, and unobtainable elsewhere.'" American Bar Association, Professional Responsibility in Litigation, 2016 Edition, Chapter 13: Lawyers as Witness, at 675. Whether he appears at trial directly or via deposition is immaterial. His testimony matters to a central disputed issue. Nor does his

9

declaration end the inquiry.  As he admits, that declaration is based only on his current "knowledge and recollection," and fails to address many questions that Novartis will pursue in deposition.

Shilpa also points to the presence of three other Shilpa-side witnesses at one of the interactions with Novartis in March 2016 as reason why Mr. Iyer's testimony is not needed.  (D.I. 53 at 14.)  But Mr. Iyer alone spoke to Novartis twice, as is undisputed.  He claims to have told Novartis that Gilenya infringed in the first of those discussions.  (D.I. 54 ¶ 6.)  Novartis disputes that fact.  That alone makes Mr. Iyer "necessary."  Plus, Shilpa has not committed to make these other Shilpa witnesses available.  One apparently is no longer with Shilpa.[4]  The other two are employed by non-party Shilpa entities and are based in India and California, and thus are not amenable to trial subpoena.[5]  Mr. Iyer thus remains the only witness capable of testifying about the 2016 events from Shilpa's perspective.

Finally, Shilpa complains that disqualifying Mr. Iyer would create a "chilling effect on the practice of pre-suit negotiations in patent litigation[.]"  It is difficult to see how.  (D.I. 53 at 19.)  To avoid the problem Shilpa describes, all patentee counsel must do is provide notice of the patent and infringement in writing.  Any pre-suit oral discussions can be directly between the parties and not through counsel.  But here, Mr. Iyer stuck himself into the middle, and thereby made himself an indispensable witness to key events.  He must be disqualified.

## CONCLUSION

For the foregoing reasons, Novartis respectfully requests that the Court disqualify Chidambaram S. Iyer from further representing Shilpa in this action.

---

[4]  *See* https://in.linkedin.com/in/dr-akshay-kant-chaturvedi-38797b1.

[5]  *See* https://www.linkedin.com/in/vishnukant-bhutada-0b299b16b/; https://www.linkedin.com/in/janak-kastia-3b5aab1.

Dated:  December 23, 2021

OF COUNSEL:

Jane M. Love, Ph.D.
Robert W. Trenchard
Paul E. Torchia
Kyanna Sabanoglu
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Tel:  (212) 351-4000
jlove@gibsondunn.com
rtrenchard@gibsondunn.com
ptorchia@gibsondunn.com
ksabanoglu@gibsondunn.com

David Glandorf
GIBSON, DUNN & CRUTCHER LLP
1801 California Street, Suite 4200
Denver, CO  80202-2642
dglandorf@gibsondunn.com

Emily M. Whitcher
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive,
Irvine, CA  92612
ewhitcher@gibsondunn.com

Respectfully submitted,

MCCARTER & ENGLISH, LLP

By:  */s/ Daniel M. Silver*
    Daniel M. Silver (#4758)
    Alexandra M. Joyce (#6423)
    Renaissance Centre
    405 N. King Street, 8th Floor
    Wilmington, Delaware 19801
    (302) 984-6300
    dsilver@mccarter.com
    ajoyce@mccarter.com


*Counsel for Defendant*
*Novartis Pharmaceuticals Corporation*