# SMITH KATZENSTEIN JENKINS LLP

March 23, 2022

**_VIA CM/ECF, EMAIL & HAND DELIVERY_**

Hon. Susan Robinson
FARNAN LLP
919 North Market Street
12th Floor
Wilmington, DE 19801

**Re:** **_Shilpa Pharma, Inc. v. Novartis Pharms. Corp._, C.A. No. 21-558-MN (D. Del. 2021)**

Dear Judge Robinson:

We, along with Sughrue Mion LLP ("Sughrue"), represent Plaintiff Shilpa Pharma, Inc. ("Shilpa") in the above referenced matter in which Your Honor has been selected as a Special Master. We write to inform Your Honor of recently learned information that directly bears on Your Honor's consideration of Novartis' Motion for Disqualification (D.I. 42), set for oral argument on April 7th.

Mr. Iyer is a partner at Sughrue and has been counsel to Shilpa for many years. A cornerstone of Novartis' motion is its argument that Mr. Iyer corresponded and met with Mr. Weibel of Novartis regarding the '816 patent in the February-April, 2016 timeframe. D.I. 42 at 1-6. As a result, Novartis argues that Mr. Iyer is a necessary witness in this case and must be disqualified as counsel because any information he may learn as counsel to Shilpa will prejudice any testimony he may later give. Prior to Novartis' filing of its motion, Shilpa repeatedly asked what confidential information/documents Novartis possessed that could possibly affect Mr. Iyer's memory, but Novartis provided none. D.I. 44-4 at 2; D.I. 48 at 2. Shilpa propounded discovery requests to find out.

In its Motion, Novartis told the Court that responses to Shilpa's discovery requests (directed to the circumstances under which it learned of the '816 patent in the early 2016 timeframe) were the _raison d'être_ for disqualification:

> Shilpa has now served interrogatories and requests for production targeted specifically at the parties' interactions in early 2016. (_citing_ Shilpa RFPs 26-28 and Interrogatory No. 6.) _This is precisely the sort of information Mr. Iyer should not have access to as counsel given his role as a witness in this action. Mr. Iyer's mere exposure to such documents will contaminate his memory._ No matter how earnest Mr. Iyer is in keeping his memory separate from his present advocacy, he cannot "un-see" the confidential materials. This situation is exactly what the lawyer-witness rule is designed to prevent.

The Hon. Sue L. Robinson; Page 2

D.I. 42 at 7 (emphasis added).  Novartis added that "Mr. Iyer, if not disqualified, could have unrestricted access to all tiers of Novartis documents—including any related to advice of counsel, should Novartis assert such a defense. Shilpa recently served discovery seeking just such materials. (citing RFPs 26-28 and interrogatory. No. 6.) That access would allow Mr. Iyer in his role as zealous advocate to shape testimony to Shilpa's advantage, even innocently—a direct conflict with his other role as sworn witness."  D.I. 42 at 9-10[1].

In a subsequent letter to Judge Fallon of November 29, 2021 (D.I. 45), Novartis requested that Mr. Iyer be precluded from accessing Confidential materials under the Protective Order, or else "Novartis would need to withhold from production any protected information, for fear that Mr. Iyer's access as counsel could pollute his memory and testimony as a witness. *The prevention of that harm is one of the very bases of Novartis's disqualification motion*." (D.I. 45 at 1) (emphasis added).  Doubling down on its argument that the Court *should* "sideline" Mr. Iyer, Novartis threatened that it "*will be forced to withhold discovery*" to preserve the Court's ability to grant the full relief sought in the disqualification motion."  D.I. 48 at 1-2 (emphasis added).

Swayed by Novartis' misstatements, the Court precluded Mr. Iyer from accessing Novartis Confidential information when issuing the Protective Order containing the exclusionary language proposed by Novartis. D.I. 52.

On December 23, 2021, Novartis responded to Interrogatory No. 6 in a single sentence, explaining that it first became aware of the '816 Patent in February 2016 when Mr. Iyer contacted Novartis' Mr. Waibel. Ex. 1 pp. 10. But the entire substance of this response was publicly available, based on information provided by *Shilpa*.  D.I. 1¶¶28, 49; Exh. 2, pp. 10-11.

On January 10, with Mr. Iyer completely precluded from access to Confidential information under the Protective Order, Shilpa asked Novartis to fully supplement its response to Interrogatory No. 6, since the entirety of Novartis's response was taken from Shilpa's *public* filings.  Shilpa reminded Novartis of its "representation to the Court that the response to this Interrogatory was so sensitive that disqualification [] was required," and that the Protective Order provisions could be used to avoid the contamination problem referred to in its briefing papers. Exh. 3 p. 5.

On January 28, Novartis advised that its response to Interrogatory No. 6 contained only the *nonconfidential* portion of the response but that "further information and documentation from the parties *will be forthcoming* regarding the content and import of the meeting." Exh. 4, p. 5 (emphasis added).

On February 10, Shilpa followed up with Novartis asking when Novartis would provide the *confidential* portion of its response to Interrogatory No. 6 and when it would provide the

---

[1]  Shilpa's Interrogatory No. 6 sought a description of the circumstances under which Novartis first became aware of the '816 patent.  Shilpa's RFPs 26-28 are related to Interrogatory 6 and generally seek documents related to: knowledge of the '816 patent, licensing considerations, and the March, 2016 meeting between the parties.

confidential documents responsive to the related document requests.  Exh. 5, p. 5 (emphasis added).

On February 23, Novartis responded that it had answered the interrogatory and that "*Novartis currently is unaware of any other non-privileged responsive information.  If Novartis learns of such information during discovery, we will supplement our response*."  Exh. 6, p. 4 (emphasis added).

In a March 2 conference between the parties, Novartis stated that it had answered Interrogatory 6 in full and that it was not aware of any non-privileged confidential documents containing information responsive to interrogatory 6 or to the corresponding RFPs (Nos. 27 and 28). Exh. 7, p. 2. On March 4, Novartis added that search efforts were nevertheless ongoing. Exh. 8.

At this point, it doesn't matter if Novartis finds a confidential document related to the 2016 meeting or not.  It doesn't matter if there are any privileged documents relating to the meeting or the '816 patent, nor does it matter if Novartis may choose at some unspecified date in the future to waive privilege on such document.  What matters is that at the time it made its representations to the Court in D.I. 42, 45, 48, and 58. Novartis, in fact, <u>knew of no such confidential documents or information</u>, and that its arguments seeking to disqualify/exclude Mr. Iyer were baseless.

Novartis represented to the Court *on multiple occasions* in Nov.-Dec. 2021 that Mr. Iyer should be banned from access to confidential information and that he should be disqualified *in toto*, because the information he would have access to as Shilpa counsel would "contaminate" his memory and affect his testimony as witness. D.I. 42, 45, 48.  Except now it becomes clear that there is no such information, confidential or otherwise, supporting that claim.  None.  The basis of Novartis' representations to the Court do not exist.

Novartis has had Mr. Iyer effectively banned from fully participating in the representation of his client for almost four months only to now disclose that the "discovery materials that could, even innocently, shape his memory and testimony about the 2016 discussions, such as Novartis confidential documents" do not exist.  D.I. 42 p. 1.

The conceded absence of any confidential information or documents that could affect his testimony, combined with Novartis' admissions that it "does not know how Mr. Iyer will testify, or "which side his testimony will ultimately help" and that "the details of Mr. Iyer's testimony are unknown" D.I. 42, pp. 8, 17 reveals Novartis' tactical abuse of ABA Model Rule 3.7 on the basis of a conflict that exists only in the minds of Novartis.  Shilpa's right to the counsel of its choice should not be disturbed on a record devoid of any factual basis to support disqualification. *Xerox Corp. v. Google, Inc.* 270 F.R.D. 182, 185 (D. Del. 2010) (significant harm in denying plaintiff counsel of its choice in the "complex and technical realm of patent litigation.").

Based on the above, and for the reasons set forth in our papers, Novartis' motion to disqualify should be denied and Mr. Iyer should be reinstated as a Qualified Person eligible to access confidential information in this litigation.

The Hon. Sue L. Robinson; Page 4

Respectfully Submitted,

*/s/ Eve H. Ormerod*

Eve H. Ormerod (#5369)

Enclosures

cc:     All Counsel of Record (via CM/ECF)
        Special Master Sue L. Robinson (via email & hand delivery)