IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SHILPA PHARMA, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 21-558-MN-SRF |
| | ) |
| NOVARTIS PHARMACEUTICALS | ) |
| CORPORATION, | ) |
| | ) |
| Defendant. | ) |

### REPORT AND RECOMMENDATION

By Order dated February 28, 2022, I was appointed a Special Master by The Honorable Maryellen Noreika, my assigned duty being "to determine whether the Court should grant Defendant's Motion to Disqualify Chidambaram S. Iyer as Plaintiff's Counsel Under the Lawyer- Witness Rule (D.I. 41)."  (D.I. 70)  Since that time, I have reviewed the papers submitted by the movant, Defendant Novartis Pharmaceuticals Corporation ("Defendant" or "Novartis"), and the papers submitted in opposition to the motion by Plaintiff Shilpa Pharma, Inc. ("Plaintiff" or "Shilpa").  I have heard oral argument, and then reviewed the supplemental letter briefs I requested after argument.  My analysis and recommendation follow.

### INTRODUCTION

The patent at issue in this case is U.S. Patent No. 9,266,816 ("the '816 patent"), which issued February 23, 2016.  The '816 patent describes crystalline polymorphic forms of fingolimod hydrochloride and processes for the preparation thereof.  Novartis sells multiple sclerosis medicine Gilenya®, the active ingredient of which is fingolimod.  Shilpa alleges in its complaint that the fingolimod in Gilenya® is in the form of a polymorph claimed in the '816 patent.  Shilpa further alleges willful and induced infringement.

1

The present dispute centers on the evidentiary bases for such allegations, both of which require proof of knowledge of the '816 patent, and of the intent to infringe and/or to induce infringement of the patent. *See, e.g., AOS Holding Co. v. Bradford White Corp.,* 2021 WL 5411103, at *21 (D. Del. March 31, 2021) (explaining that a plaintiff asserting a claim of induced infringement must show, *inter alia,* that the alleged inducer possessed a "specific intent to encourage another's infringement," while to prove willful infringement, a plaintiff must show, *inter alia,* "intent of infringing the patent" or "deliberate infringement."). *See also ZapFraud, Inc. v. Barracuda Networks, Inc.,* 528 F. Supp. 3d 247, 249 (D. Del. 2001).

## LEGAL STANDARD

Courts have "the inherent authority to supervise the professional conduct of attorneys appearing before [them], including the power to disqualify an attorney from a representation." *Princeton Digital Image Corp. v. Office Depot Inc.,* 2017 WL 3573812, at *1 (D. Del. Aug. 17, 2017). "As a general rule, the exercise of this authority is committed to the sound discretion of the district court[.]" *United States v. Miller,* 624 F.2d 1198, 1201 (3d Cir. 1980).

Motions to disqualify are "'generally disfavored' and, therefore, require the moving party to show clearly that 'continued representation would be impermissible.'" *Princeton Digital,* 2017 WL 3573812, at *1. "Resolving the question of whether to disqualify counsel requires the Court to 'carefully sift all the facts and circumstances,' . . . which the Court approaches with 'cautious scrutiny, mindful of a litigant's rights to the counsel of its choice." *Id.* (citations omitted). Although a litigant's choice of trial counsel should not be lightly disturbed, courts also have the responsibility to maintain "public confidence in the propriety of the conduct of those associated with the administration of justice." *Id.*

Attorneys in the District of Delaware are "governed by the Model Rules of Professional Conduct of the American Bar Association." D. Del. L. R. 83.6(d); *Princton Digital,* 2017 WL 3573812, at *1. ABA Model Rule 3.7 provides that "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness," subject to certain exceptions not applicable here.[1] A lawyer's testimony is "necessary" under Rule 3.7 if "relevant, material, not merely cumulative, and unobtainable elsewhere." *See Ex rel. Estate of Carta v. Lumbermans Mut. Cas. Co.,* 419 F. Supp. 2d 23, 29 (D. Mass. 2006). Comments [1] and [2] to Rule 3.7 recognize that "[c]ombining the roles of advocate and witness can prejudice the tribunal and the opposing party," as well as confuse or mislead a jury. "A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or an analysis of the proof." Comment 2.

## FACTUAL BACKGROUND

When queried about the bases for its allegations of willfulness and induced infringement, Shilpa responded (in interrogatory numbered 3) as follows:

> In February, 2016, Mr. Chid Iyer . . . contacted Mr. Peter Waibel . . . about the issuance of the '816 patent and its applicability to Novartis' commercial Gilenya® product. Mr. Iyer asked whether the parties could meet to discuss the '816 patent (and other unrelated matters) in person at the DCAT conference in New York City during the week of March 14, 2016. Mr. Waibel advised that he could meet on March 17, 2016. Mr. Iyer confirmed the meeting in a March 3 email to Mr. Waibel. Representatives from Shilpa Medicare Ltd. and Shilpa met with Mr. Waibel on March 17 and discussed the '816 patent, in addition to other unrelated matters. Mr. Waibel stated that they would consider the applicability of the '816 patent to the Gilenya® product and respond in due course. Mr. Iyer followed up in an email to Mr. Waibel of April 18, 2016. Mr. Iyer and Mr. Waibel discussed the '816 patent in one or more subsequent phone conferences, but no agreement was reached.

---

[1] To the extent Shilpa relies on ABA Rule 1.7 and the cases that discuss disqualification when a conflict exists between counsel and current clients, I find them unpersuasive authority in this dispute.

(D.I. 43-1, ex. A)  The response to interrogatory numbered 7 mirrors the above, but adds that Novartis "never provided a basis for demonstrating a good faith belief that their Gilenya® product was not covered by one or more claims of the '816 patent." (*Id.*)  In connection with this motion practice, Shilpa submitted the declaration of Mr. Iyer, which is consistent with Shilpa's responses to the above interrogatories, adding as exhibits the emails identified therein and his averment that neither the "technical aspects relating to the '816 patent, Gilenya® or fingolimod hydrochloride" nor the "details of potential licensing or financial aspects relating to the '816 patent" were discussed during the March 17 meeting or the last phone call in April. (D.I. 54 at ¶¶ 10, 12)

Novartis concedes that the interactions between Messrs. Iyer and Waibel occurred, through which the existence of the '816 patent was shared with Novartis.  Novartis denies, however, that these interactions occurred as described by Shilpa to evidence notice of infringement.  Instead, Novartis argues that, during these interactions, only generic fingolimod was discussed in the context of a license to use the '816 patent against generics.  (D.I. 85, ¶¶ 77-78; D.I. 58 at 3)  Infringement (i.e., the applicability of the '816 patent to Gilenya®) was not addressed.

## DISCUSSION

Shilpa represents in its papers that Rule 3.7 does not apply to the facts of this case, where Mr. Iyer is neither a trial advocate nor likely to be a necessary witness.  With respect to the first representation, Mr. Iyer has averred that his role as counsel to Shilpa has been and will continue to be limited to "a litigation advisory capacity and maintaining client coordination and relationship." (D.I. 54 at ¶ 15)  Certainly such a limited role addresses some of the underlying rationale for Rule 3.7, that is, to prevent confusion by the trier of fact with respect to the separate

roles of an advocate and a witness. *See Matter of Estate of Waters,* 647 A. 2d 1091, 1097 (Del. 1994) (examining Delaware's counterpart to ABA Rule 3.7). There, however, remain other "threats to the integrity of the judicial proceedings if a trial advocate also testifies as a trial witness regarding a contested issue." *Id.* For example, an attorney may be "accused of distorting the truth for the client's benefit," *id.,* or may have his testimony affected, consciously or unconsciously, through access to the opposing party's confidential information. *See Andrx Pharmaceuticals, LLC v. GlaxoSmithKline, PLC,* 236 F.R.D. 583, 587 and n.2 (S.D. Fla. 2006). Therefore, I will further explore the question of whether Mr. Iyer "is likely to be a necessary witness."

Novartis has the burden to "show clearly that 'continued representation' would be impermissible," *Princeton Digital,* 2017 WL 3573812, at *1, under Rule 3.7. In this regard, the record demonstrates that, "[o]ther than Mr. Iyer's statements," the only contemporaneous written evidence (D.I. 54, exs. A-D) of the 2016 interactions between Shilpa and Novartis does not mention the applicability of the '816 patent to Gilenya®. Therefore, Shilpa itself made Mr. Iyer's knowledge relevant, material, not merely cumulative, and unobtainable elsewhere when it asserted in its responses to interrogatories that the allegations of willful/induced infringement were based on such interactions.

Shilpa counters with two arguments. First, Shilpa contends that Mr. Iyers' testimony is merely cumulative or obtainable elsewhere, as there were other attendees at the March 17, 2016 meeting and Mr. Waibel participated in all of the disputed conversations. (D.I. 53 at 14) Second, Shilpa maintains that Mr. Iyer's testimony is not relevant to the infringement inquiries because Shilpa will not be relying on it for that purpose.

5

More specifically, Shilpa argues that "the 2016 correspondence and in-person meeting **do not** form the basis" of its inducement or willfulness allegations because knowledge of the '816 patent is not contested and, once knowledge is proven, Novartis' intent for willfulness (and inducement) purposes "is established by reference to its own conduct. Nothing Mr. Iyer said or is alleged to have said is relevant to Novartis' intent." (D.I. 93 at 1, 2) Shilpa cites to various cases that stand for the proposition that willfulness can be proven if the accused infringer "knew or should have known that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent." (*Id.* at 3, citing *Arctic Cat Inc. v. Bombadier Rec. Prods.,* 876 F.3d 1350, 1371 (Fed. Cir. 2017)). According to Shilpa, then, it does not need to call - nor will it call - Mr. Iyer as a witness to prove its inducement or willfulness allegations. (D.I. 93 at 3)

In sum (and despite its interrogatory responses), Shilpa has now represented that it will rely **solely** on the fact that Novartis knew about the '816 patent and continued to infringe and to induce others to infringe. According to Shilpa, any other evidence of intent will be gleaned from Novartis itself. For instance, a factor "'that may be considered in assessing whether infringement was intentional and deliberate include[s] . . . whether the defendant reasonably believed it did not infringe the patent.'" (D.I. 93, citing *AOS Holding Co.,* 2021 WL 5411103, at *21). Of course, a factor that could be considered supportive of a reasonable belief in non-infringement is evidence that Shilpa introduced its newly issued '816 patent to Novartis **without** any mention of its applicability to Gilenya®, consistent with Novartis' version of the facts. Other than attorney argument, however, there is no evidence that Mr. Iyer would so testify.

## CONCLUSION

Based on the papers submitted an arguments made in connection with this motion practice, where Shilpa has represented that Mr. Iyer is not serving as a courtroom advocate and

his personal knowledge is not a basis for the allegations of willful and induced infringement, there is no credible support for the application of Rule 3.7.  Moreover, it is hard to articulate any prejudice to Novartis if Mr. Iyer is allowed to continue his representation of Shilpa in his present capacity.  I find, therefore, that Novartis has not carried its burden to clearly show that continued representation would be impermissible under Rule 3.7.

    THEREFORE, I recommend this 5th day of May, 2022, that:

    1.  Defendant's Motion to Disqualify Chidambaram S. Iyer as Plaintiff's Counsel Under the Lawyer-Witness Rule (D.I. 41) be denied, without prejudice to renew, e.g., if Mr. Iyer's role changes contrary to Shilpa's representations made to date.

    2,  The Parties may file written objections to this Report and Recommendation no later than seven (7) days after being served with a copy of this ruling.

Respectfully submitted,

/s/ Sue L. Robinson
Sue L. Robinson, Special Master