

**Daniel M. Silver**
Wilmington Office Managing Partner

T. 302-984-6331
F. 302-691-1260

dsilver@mccarter.com

McCarter & English, LLP

Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801-3717

www.mccarter.com

June 3, 2022

**VIA CM/ECF AND HAND DELIVERY**
The Honorable Sherry R. Fallon
J. Caleb Boggs Federal Building
844 N. King Street
Unit 14, Room 6100
Wilmington, DE 19801-3555

Re:   *Shilpa Pharma, Inc. v. Novartis Pharmaceuticals Corporation,*
      **C.A. No. 21-558-MN (D. Del.)**

Dear Magistrate Judge Fallon:

We write for defendant Novartis in response to plaintiff Shilpa's June 2, 2022 letter. (D.I. 112.) Shilpa seeks to add outside counsel Mr. Chid Iyer as a "Qualified Person" under the Protective Order (D.I. 52), thereby giving him access to confidential Novartis documents in this case. Novartis respectfully opposes.

**Introduction**

Contrary to the suggestion in Shilpa's letter, Mr. Iyer's status under the lawyer-witness rule has not been finally resolved. The Special Master—the Hon. Sue Robinson—merely declined to disqualify Mr. Iyer "without prejudice to renew" upon a more complete record. In the meantime, he can remain as counsel only "in his present capacity." (D.I. 98 at 7.)

Mr. Iyer's "present capacity" is limited. Shilpa represented to Judge Robinson that Mr. Iyer's "role as counsel **has been and will continue to be limited to** 'a litigation advisory capacity and maintaining clients coordination and relationship.'" (D.I. 98 at 4 (quoting Iyer Declaration, D.I. 54 at ¶ 54) (emphasis added).) In other words, Shilpa represented that it would maintain the *status quo* to defeat Novartis's motion. That *status quo* includes Your Honor's December 2, 2021 Oral Order, which bars Mr. Iyer from having access to Novartis confidential documents. Judge Robinson expressly acknowledged that fact during oral argument on disqualification.

Accordingly, the *status quo* should be maintained. Any other result would prejudice Novartis and taint these proceedings, as Judge Robinson herself acknowledged in her Report and Recommendation. Novartis will depose Mr. Iyer and possibly call him at trial. At least until then, he should be sealed off from Novartis's confidential documents under the Protective Order.

Shilpa identifies no prejudice from this result, nor does Mr. Iyer's represented role require access to Novartis's sensitive information. Mr. Iyer's partners have been ably representing Shilpa for over six months. In that time, they have fully briefed claim construction; engaged at least one expert; propounded and responded to discovery; briefed a motion to compel; and filed a motion to dismiss counterclaims. Shilpa plainly is not suffering from Mr. Iyer's inability to read Novartis documents. To preserve the proceeding's integrity and avoid prejudice to Novartis, his status

should remain as it is.

### Judge Robinson's Report

Novartis moved to disqualify Mr. Iyer in November last year under the lawyer-witness rule (D.I. 41), after Shilpa had disclosed in interrogatory responses that Mr. Iyer was the basis for allegations of willful and indirect infringement. According to Shilpa, Mr. Iyer allegedly had told Novartis in 2016 that multiple sclerosis drug Gilenya® infringes Shilpa's U.S. Pat. No. 9, 266,186. (*See* D.I. 113-4 (Shilpa's Responses to Novartis's First Interrogatories), at 10–11.) That discussion supposedly made Novartis's continued sale of Gilenya® willful.

In deciding whether to disqualify Mr. Iyer, Judge Robinson was well aware that Mr. Iyer presently has no access to Novartis confidential documents. Novartis discussed Your Honor's decision to deny Mr. Iyer access to confidential documents in briefing. (D.I. 58 at 2.) Shilpa likewise discussed that decision in a letter to Judge Robinson. (D.I. 83 at 2.) And at the hearing on Novartis's motion, Judge Robinson said "I understand that Magistrate Judge Fallon has precluded Mr. Iyer from having access to any confidential documents." (Ex. A, Tr. 30:8–10.) She went on to say that "Mr. Iyer, at this point in time, would still be precluded from accessing confidential information because it would taint him as his testimony, I think it may certainly." (*Id*. 31:6–9.)

In the very first paragraph of the "Discussion" section in her Report, Judge Robinson began her analysis by focusing on Mr. Iyer's limited role in this litigation: "his role as counsel to Shilpa has been and will continue to be limited to 'a litigation advisory capacity and maintaining client coordination and relationship.'" (D.I. 98 at 4 (quoting Iyer Declaration, D.I. 54 at ¶ 54). Even with such a limited role, however, Judge Robinson remained concerned about the risk of taint from Mr. Iyer's access to Novartis documents. She found that there could be "'threats to the integrity of the judicial proceedings if a trial advocate also testifies as a trial witness regarding a contested issue.'" (D.I. 98 at 5 (citing *Matter of Estate of Waters*, 647 A.2d 1091, 1097 (Del. 1994).) Among these was the risk that the attorney "may have his testimony affected, consciously or unconsciously, through access to the opposing party's confidential information." (*Id*. (citing *Andrx Pharmaceuticals, LLC v. GlaxoSmithKline, PLC*, 236 F.R.D. 583, 587 and n.2 (S.D. Fla. 2006).) This is exactly the threat Judge Robinson referred to in oral argument.

As for disqualification, only a last minute switch in position saved Mr. Iyer from disqualification. Judge Robinson found that "Shilpa itself" had "made Mr. Iyer's knowledge relevant, material, not merely cumulative, and unobtainable elsewhere when it asserted in its responses to interrogatories that the allegations of willful/induced infringement were based on such interactions." (D.I. 98 at 5.) However, during briefing, Shilpa recanted any reliance on Mr. Iyer's evidence. Shilpa proclaimed that Mr. Iyer's testimony did not "form the basis for" the willfulness and indirect infringement allegations. (*Id*. at 6.) Judge Robinson thus found that, "despite its interrogatory responses," Shilpa would now rely "solely" on alleged knowledge of the patent alone plus Novartis's conduct to show willfulness and indirect infringement. (*Id*.)

On that basis, Judge Robinson found that Novartis would suffer no prejudice "if Mr. Iyer

is allowed to continue his representation of Shilpa in his present capacity." (*Id*. at 7.) Judge Robinson then denied the motion "without prejudice to renew, e.g., if Mr. Iyer's role changes contrary to Shilpa's representations made to date." (*Id*.) That would include if Mr. Iyer later provides "evidence that Shilpa introduced its newly issued '816 patent to Novartis without any mention of its applicability to Gilenya®, consistent with Novartis' version of the facts." (*Id*. at 6.)

**Analysis**

Federal Rules of Civil Procedure 26(c)(1)(D), (E), and (G) provide that the Court may "for good cause, issue an order to protect a party or person" from "oppression" by "limiting the scope of disclosure or discovery to certain matters"; "designating the persons who may be present while the discovery is conducted"; and requiring that confidential information "not be revealed or be revealed only in a specified way[.]"

Where, as here, these rules are applied to counsel, relief depends on "the factual circumstances surrounding each individual counsel's activities, association, and relationship with a party[.]" *U.S. Steel Corp. v. U.S.*, 730 F.2d 1465, 1468 (Fed. Cir. 1984); *see also In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1378 (Fed. Cir. 2010) (decision to preclude lawyer access to discovery material "must be determined . . . by the facts on a counsel-by-counsel basis'") (quoting *U.S. Steel*, 730 F. 2d at 1468)). In particular, while "[a]n attorney's representation [] generally comes with a right of access to all of the materials in the case, including confidential materials produced by the other side in discovery[,]" that right "must give way under various circumstances, such as when there is an unacceptably high risk of harm to a party from giving a particular individual access to that party's confidential materials." *British Telecommunications PLC v. IAC/InterActiveCorp*, 330 F.R.D. 387, 390 (D. Del. 2019).

In initially precluding Mr. Iyer from access to Novartis's confidential documents, Your Honor relied on *Andrx Pharmaceuticals, LLC v. GlaxoSmithKline*, PLC, 236 F.R.D. 583, 587 (S.D. Fla. 2006). (12/2/21 Oral Order.) That is the same case Judge Robinson relied on in finding that a lawyer's access to confidential documents as counsel could taint the lawyer's memory and testimony as witness. (D.I. 98 at 5.) As applied to Mr. Iyer, the reasoning remains as valid today as it did in December 2021, if not more so in view of Judge Robinson's report.

Judge Robinson denied disqualification "without prejudice to renew" and only so long as Mr. Iyer remains involved in the case in his "present capacity." (D.I. 98 at 7.) During oral argument, Judge Robinson made clear her understanding of Mr. Iyer's "present capacity" included that Your Honor had "precluded Mr. Iyer from having access to any confidential documents" and that "Mr. Iyer, at this point in time, would still be precluded from accessing confidential information because it would taint him as his testimony[.]" (Ex. A, Tr. 30:8–10, 31:6–9.) In her Report, Judge Robinson reiterated Mr. Iyer's limited role at the outset of her Discussion section, and that limited role formed the basis for her analysis and ultimate decision. (*See, e.g.,* D.I. 98 at 4.) Accordingly, the *status quo* should be maintained. Anything else would represent a change in Mr. Iyer's present capacity that could necessitate a renewed motion to disqualify.

Shilpa says that Judge Robinson's reference to Mr. Iyer's "capacity" refers only to his

capacity as a litigation advisor rather than trial counsel. (D.I. 112 at 3.) That is an incomplete reading of the record as a whole, Judge Robinson's Report, and her ultimate decision, which hinges on maintaining the *status quo* and not enlarging Mr. Iyer's involvement in any way. Mr. Iyer narrowly avoided disqualification by representing that his role "**has been and will continue to be limited**," which Judge Robinson accepted. Shilpa cannot now negate that representation by expanding his role as soon as the ink is dry on the Order adopting the Report. Moreover, Shilpa does not address the transcript at all in its letter, but the contents are clear—Judge Robinson stated in the clearest possible terms that "Mr. Iyer, at this point in time, would still be precluded from accessing confidential information because it would taint him as his testimony[.]" (Ex. A, Tr. 31:6–9.)

Shilpa complains that Judge Robinson's statement about Mr. Iyer's present capacity is "dictum." (D.I. 112 at 3.) Not so—it was a key part of her decision. She found that a party like Novartis **could** be prejudiced if a lawyer like Mr. Iyer had access to confidential documents, but that Novartis would not be prejudiced because Mr. Iyer had no such access in his present capacity. There is no other plausible reading of her decision.

Novartis fully intends to depose Mr. Iyer and possibly call him at trial. The subjects of examination will include what Judge Robinson defined: whether Mr. Iyer "introduced its newly issued '816 patent to Novartis without any mention of its applicability to Gilenya®, consistent with Novartis' version of the facts," which Judge Robinson found to be "a factor that could be considered supportive of a reasonable belief in non-infringement[.]" (D.I. 98 at 6 (emphasis omitted).) Novartis believes the evidence will show that Mr. Iyer never told Novartis that Gilenya® infringes Shilpa's patent—contrary to the representations Shilpa has previously made.

Shilpa makes much of the fact that Mr. Iyer's status under the Protective Order was to last only until the motion to disqualify was "resolved." (*See, e.g.,* D.I. 112 at 2.) But the motion has not been fully resolved. It has effectively been deferred and is likely to be renewed. Pending that decision, Mr. Iyer should remain precluded from seeing Novartis's documents, just like Shilpa itself is. Like an in-house lawyer, Mr. Iyer can still of course participate in advising Shilpa without access to those documents. But granting him access to Novartis confidential documents now will irrevocably taint the proceeding.

To illustrate just one problem, if Mr. Iyer has access as counsel to Novartis documents before he is deposed in this case, then Novartis's ability to depose him may be compromised. Questions about what documents he reviewed, and when, that could have impacted his recollection may be hidden behind a wall of privilege and work product assertions. That surely will lead to further discovery disputes and possible serious taint to the proceeding.

Given that Shilpa has identified no concrete prejudice in Mr. Iyer not currently having access to Novartis documents, and that Mr. Iyer has been able to serve in his current role without having access to Novartis documents, the Court should maintain the *status quo* until such time as the issue of Mr. Iyer's status is fully resolved.

June 3, 2022<br>
Page 5

Respectfully submitted,

*/s/ Daniel M. Silver*

Daniel M. Silver (#4758)

cc:  Counsel of Record (via CM/ECF and Electronic Mail)